Dennis RUTHERFORD, Harold Taylor, Richard Orr, Gregory Armstrong, Jack Jones and William Robles, on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,

v.

Peter J. PITCHESS, as Sheriff of the County of Los Angeles, William Anthony, as Assistant Sheriff of the County of Los Angeles, John Knox, as Chief of the Corrections Division of the Los Angeles County Sheriff's Department, James White, as Commander of the Los Angeles County Jail, and Edward Edelman, Peter Schabarum and Baxter Ward, as Supervisors of the County of Los Angeles, Defendants-Appellees.

No. 82–5071.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 9, 1983.

Decided Aug. 23, 1983.

Frederick R. Bennett, Deputy County Counsel, Los Angeles, Cal., for defendants-appellees.

Fred Okrand, ACLU Foundation of Southern Cal., Los Angeles, Cal., for plaintiffs-appellants.

Before FLETCHER and NELSON, Circuit Judges, and SOLOMON,* District Judge.

NELSON, Circuit Judge:

Appellants, plaintiffs in the action below, appeal from a district court order awarding $5,000 in attorney's fees under 42 U.S.C. § 1988 (Supp. IV 1980) for services rendered by their attorney, the American Civil Liberties Union, in proceedings (1) to enforce compliance with a final judgment by way of contempt and (2) to modify that judgment. In determining the fee award, the district court considered two factors that are improper considerations in setting attorney's fees in civil rights actions. Furthermore, although the district court was correct in considering the outcome of the proceedings as a factor, the court did not sufficiently articulate the relationship between the fee awarded and the results obtained. We therefore reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 15, 1979, plaintiffs obtained a judgment requiring defendants, who are the public officials responsible for maintaining and operating the Los Angeles County Central Jail, to make certain constitutionally required improvements in the jail.

In May 1980, plaintiffs obtained an order to show cause re contempt for violations of the judgment. Paragraph 1 of the judgment requires that every prisoner kept overnight in the jail be provided a mattress and a bunk on which to sleep, with exceptions allowed for emergencies and security problems. Plaintiffs alleged that due to overcrowding, many prisoners were required to sleep on the floor or in other areas not designated for sleeping. Plaintiffs also alleged that defendants had violated para-

graph 3 of the judgment, which requires that prisoners be allowed at least two and one-half hours of outdoor exercise or other recreation per week. The prisoners alleged that adherence to the outdoor exercise schedule was sporadic and that even when they were allowed outdoor exercise, the time periods were often shorter than required. Paragraph 6 of the judgment sets forth certain requirements for transferring prisoners from the jail to court. The prisoners contended that defendants had violated these requirements in that prisoners were often awakened before the specified time, the holding cells did not contain a sufficient number of seats, and prisoners were often required to wait for long periods in the holding cells and on the bus. Furthermore, the prisoners alleged that defendants had violated paragraph 9 of the judgment by not allowing the prisoners the minimum fifteen minutes for each meal. Finally, paragraph 10 of the judgment requires that each inmate receive a complete change of clothing at least twice a week. The prisoners alleged that they seldom received a change of clothing more frequently than once a week and that a complete set of clothing often was not available.

In addition, plaintiffs filed a motion to reopen the case and to modify the judgment on the issues of overcrowding and indoor recreation and to enjoin defendants (1) from housing prisoners in undesignated areas and (2) to comply with the classification and recreation program presented at trial. Defendants had presented a plan under which they proposed to classify prisoners and provide them liberalized access to the freeways and dayrooms. In view of defendants' voluntary efforts on this issue, the district court concluded in its memorandum decision that no formal order was necessary regarding the use of dayrooms and freeways. In their post-trial motion to reopen, the prisoners alleged that defendants had not adhered to their proposed plan.

* Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

Rather, the prisoners claimed that due to overcrowding, jail dayrooms and freeways had been converted to living quarters and consequently the prisoners had suffered in terms of both lessened living space and reduced access to recreational areas.

The district court issued its memorandum decision on October 20, 1981. The court did not hold defendants in contempt, but the court recognized that the bringing of the contempt proceedings had an impact upon defendants' subsequent good faith compliance with the judgment. The court also denied plaintiffs' motion to modify the judgment, noting that events subsequent to the initiation of the proceedings rendered further modification unnecessary. The court granted defendants' motion to modify the order with regard to court transportation procedures.

Plaintiffs filed a motion for attorney's fees under 42 U.S.C. § 1988 (Supp. IV 1980) for services rendered in the contempt/modification proceedings, seeking $64,000 for 430 claimed hours at a rate of $100 per hour times an incentive multiplier of 1.5. The district court awarded plaintiffs' counsel a "token" award of $5,000. The court recognized that $5,000 was "far less than adequate consideration for the time and efforts reasonably and necessarily required for the proceedings." Nevertheless, the court determined the $5,000 award to be reasonable in light of several factors, including (1) the outcome of the proceedings, (2) defendants' good faith efforts to comply with the judgment, (3) the efforts reasonably required for the proceedings, and (4) the fact that plaintiffs' counsel had received $95,000 in attorney's fees in the primary action.

On appeal plaintiffs contend that the district court abused its discretion in awarding only $5,000 in attorney's fees.

## DISCUSSION

I. *Plaintiffs were the prevailing party in the contempt/modification proceedings.*

Under section 1988, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" in civil rights actions. 42 U.S.C. § 1988 (Supp. IV 1980).

In order to be characterized as a "prevailing party," a party need not obtain formal relief on the merits. *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980); S.Rep. No. 1011, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5908, 5912–13. Rather, the party must establish "some sort of clear, *causal relationship* between the litigation brought and the practical outcome realized." *American Constitutional Party v. Munro,* 650 F.2d 184, 188 (9th Cir.1981) (emphasis in original).

In this case, plaintiffs did not secure a modification of the judgment nor were defendants held in contempt. However, the district court's findings of fact and conclusions of law indicate that the pendency of the proceedings resulted in improvements in the defendants' efforts to comply with the judgment:

7. Plaintiffs failed to carry their burden of proof with regard to their motion for modification of the judgment, although the pendency of these proceedings resulted in corrective action that rendered modification unnecessary.

8. Although the plaintiffs were not the prevailing party, there were reasonable grounds for the plaintiffs to have initiated these subsequent proceedings, and the plaintiffs efforts have had an impact on encouraging the defendant's good faith efforts to adhere to the portions of the judgment . . . .

Findings of Fact and Conclusions of Law re Order for Attorney's Fees (Dec. 2, 1981), at 5.

At first glance, paragraph 8 of the findings appears to be internally inconsistent. The court states that plaintiffs were not the prevailing party but proceeds to find a causal relationship between the proceedings and the desired outcome and then

to award attorney's fees. However, we interpret the district court's statement that "plaintiffs were not the prevailing party" as simply an observation that plaintiffs did not succeed in obtaining formal judicial relief. The district court certainly did not intend to find that plaintiffs were not the "prevailing party" as that term is used in section 1988 because in that event plaintiffs would not be entitled to any attorney's fees under the statute.

The district court was correct in determining that plaintiffs were entitled to attorney's fees under section 1988 because of the causal relationship between the litigation brought and the practical outcome realized. *See American. Constitutional Party,* 650 F.2d at 188. In finding such a causal relationship and in awarding attorney's fees to plaintiffs, the district court implicitly found that plaintiffs were the prevailing party for the purposes of section 1988. Consequently, the central issue in this case is whether the award of $5,000 in attorney's fees was reasonable.

## II. *The district court abused its discretion in awarding $5,000 in attorney's fees.*

■ The amount of attorney's fees to be awarded the prevailing party is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Kerr v. Screen Extras Guild, Inc.,* 526

F.2d 67, 69 (9th Cir.1975), *cert. denied sub nom. Perkins v. Screen Extras Guild, Inc.,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). In *Kerr,* the Ninth Circuit set forth twelve factors to be considered in the balancing process required in a determination of reasonable attorney's fees[1] and stated that failure to consider those factors constitutes an abuse of discretion. *Id.* at 70. "The district court, however, need not discuss specifically each of the twelve factors. It is sufficient if the record shows that the court considered the factors 'called into question by the case at hand and necessary to support the reasonableness of the fee award.'" *Rivera v. City of Riverside,* 679 F.2d 795, 796–97 (9th Cir.1982), (quoting *Kessler v. Associates Financial Services Co.,* 639 F.2d 498, 500 n. 1 (9th Cir.1981)).

■ In this case, the district court considered a number of the *Kerr* factors, such as the outcome of the proceedings, the efforts reasonably and necessarily required for the proceedings, and the ability of the attorneys.[2] However, the district court did not sufficiently articulate the manner in which it considered the outcome of the proceedings to be relevant to the fee award. *See Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 1941–42, 76 L.Ed.2d 40 (1983). Furthermore, the district court considered two factors that are not proper considerations in awarding attorney's fees: (1)

---

**1.** The twelve factors are as follows: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr,* 526 F.2d at 70. These factors were originally set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), and derive directly from the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2–106.

**2.** Plaintiffs point to portions of the transcript of the hearing on attorney's fees to argue that the district court considered the non-profit, public interest status of plaintiffs' attorney in awarding attorney's fees. Although plaintiffs are correct in asserting that the non-profit, public interest employment of a prevailing party's attorney does not justify reducing compensation, *Dennis v. Chang,* 611 F.2d 1302, 1304 & n. 4 (9th Cir.1980), we decline to reach this issue. In the detailed findings of fact and conclusions of law setting forth the reasons for the award of attorney's fees, the district court did not mention the non-profit, public interest status of plaintiffs' attorney. When a district court sets forth detailed reasons for its determination, this court's review should be limited to the reasons given by the district court.

the good faith efforts of defendants to comply with the judgment after initiation of the contempt proceedings and (2) the previous award of attorney's fees for services rendered in the primary action.

### (1) Good faith of defendants

■ A defendant's good faith efforts to comply with an injunction after the initiation of contempt proceedings should not be considered in setting attorney's fees for plaintiff's counsel where there were reasonable grounds for bringing the contempt proceedings and where the pendency of those proceedings had an impact on defendant's compliance.

The purpose of section 1988 is to encourage and ensure private enforcement of civil rights laws. *Suzuki v. Yuen,* 678 F.2d 761, 764 (9th Cir.1982); S.Rep. No. 1011, 94th Cong., 2d Sess. 2, *reprinted in* 1976 U.S. Code Cong. & Ad.News 5908, 5910. The district court in the instant case recognized that plaintiffs perform an important role in policing defendants' compliance with the judgment. If civil rights plaintiffs were faced with a rule under which attorney's fees were reduced for good faith efforts by defendants to comply with judgments after initiation of contempt proceedings, they would have less incentive to monitor compliance with judgments that protect important constitutional rights and to bring enforcement actions.

Furthermore, the rule we adopt today, that fee awards are not subject to reduction for defendants' good faith efforts undertaken after suit, will encourage defendants to comply with civil rights judgments in order to avoid substantial fee awards. Although it is true that reduction of fees for good faith would encourage defendants to comply *after* a contempt proceeding is brought, the rule we adopt today encourages defendants to comply in the first place—*before* a contempt proceeding is brought. If the rule were otherwise, a defendant would have no incentive to comply in the first place: a noncomplying defend-

ant could simply wait until a contempt action was initiated and then bring itself into compliance, thereby avoiding both a contempt citation and substantial attorney's fees. Furthermore, the rule we adopt today does not discourage defendants from complying after contempt proceedings are initiated. As a practical matter, a defendant's compliance after the suit is brought will reduce the attorney's fees because plaintiff's counsel need not spend as many hours preparing and presenting the case.

In order to encourage private enforcement of civil rights and to deter civil rights violations, we hold that the good faith efforts of defendants after the bringing of the contempt proceedings should not be considered in awarding attorney's fees.

### (b) Prior award of attorney's fees

■ The district court awarded plaintiffs $90,000 for legal services in obtaining the original judgment (calculated with an incentive multiplier of 1.5) and $5,000 for services rendered in appealing that award. The district court clearly considered this initial award an important factor in setting attorney's fees for the contempt/modification proceedings.

The amount of fees awarded in the primary action is an inappropriate consideration in determining reasonable attorney's fees in a later and entirely distinct phase of the case such as enforcement proceedings. In monitoring defendants' compliance with the judgment, plaintiffs are safeguarding important constitutional rights. The rule we adopt today will provide incentive for defendants to comply with civil rights judgments and for plaintiffs to monitor compliance and bring enforcement proceedings when appropriate.

### (3) Outcome of the proceedings

■ In *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court held that "the extent of a plaintiff's success is a crucial factor in

determining the proper amount of an award of attorney fees under 42 U.S.C. § 1988," and that "the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* at 1943. The district court in the instant case considered the outcome of the proceedings as a factor in setting the fee award, but the court did not sufficiently articulate the manner in which it took the outcome into account. *See id.* at 1941.

On remand, the district court should specifically examine "the relationship between the fee awarded and the results obtained." *Id.* at 1942. If the district court concludes that plaintiffs prevailed on only some of the issues, the court should consider " 'the relative importance of various issues, the interrelation of the issues, the difficulty in identifying issues, [and] the extent to which a party prevails on various issues.' " *Id.* at 1942 (quoting district court record).

The fee award should not be reduced because plaintiffs did not obtain formal success on the merits. Rather, if the bringing of the contempt/modification proceedings caused defendants' compliance with the judgment regarding a particular issue, plaintiffs have obtained the desired results. As the Supreme Court indicated in *Hensley*, "[t]he result is what matters." *Id.* at 1940. It makes no difference to the award of attorney's fees whether plaintiffs obtained the desired results by achieving formal success on the merits or by bringing a lawsuit that served as a catalyst for the desired results. *See id.* at 1942–43 n. 15. Nor is it necessarily significant that plaintiffs did not obtain the desired results on all the issues raised. Rather, plaintiffs "may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *Id.* at 1941 n. 11.

## CONCLUSION

In determining attorney's fees for services rendered in the contempt/modification proceedings, the district court considered two improper factors: defendants' good faith efforts after the initiation of the contempt proceedings and the amount of fees awarded in the primary action. Furthermore, although the district court was correct in considering the outcome of the proceedings, the court did not sufficiently articulate the relationship between the fee awarded and the results obtained. We therefore reverse and remand for reconsideration in light of the proper factors.

REVERSED and REMANDED.

SOLOMON, Senior District Judge, concurring:

I concur in the result, but I would delete the section "Good Faith of Defendants." I doubt whether the statement in the majority opinion "that fee awards are not subject to reduction for defendants' good faith efforts undertaken after suit" will bring about the hoped for benefits. It probably will have the contrary effect, and it may confuse both lawyers and trial judges.

Good faith efforts of lawyers to rectify a bad situation, undertaken even after an action has been filed, do not create problems for the litigants or trial judges, and they do not prolong litigation or multiply costs. It is the uncooperative and recalcitrant lawyers who cause most of the difficulties.

I do not believe we should say anything to discourage good faith efforts on the part of officials to improve conditions which the plaintiffs seek to remedy. Public officials, both before and after actions are filed, should be encouraged to improve conditions, even those which are not illegal but which may later result in conditions which the court seeks to remedy. There is nothing improper for officials to take any of these steps even after an action has been filed in order to reduce attorney fees.

There is a difference between conduct which is patently illegal and conduct which is marginally improper; public officials should not be penalized for attempting to correct both types of conduct.

Too many cases are being prolonged even when the goals sought have been substantially reached solely for claimants' lawyers to increase their fees.

I would delete the section "Good Faith of Defendants." I would also modify other parts of the opinion which appear to characterize as illegal the conditions which public officials sought to improve solely because they took steps to improve those conditions.