Joseph **HUTCHISON, Individually And As Representative Of A Class Of Citizen Complainants Who Are Similarly Situated, Plaintiff,**

v.

**James WELLS, et al., Defendants.**

**No. IP 86–891–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

Sept. 14, 1989.

Michael K. Sutherlin, Indianapolis, Ind., for plaintiff.

Dale Simmons, City Legal Div., Indianapolis, Ind., for defendants.

## ENTRY

BARKER, District Judge.

The present controversy involves a petition for attorney's fees under 42 U.S.C. § 1988, following a judgment for the plaintiff pursuant to a Rule 68 offer of judgment. The defendants object to the petition on a number of grounds. Specifically, they contest:

1) the inclusion of hours spent on a count that was dismissed;

2) the inclusion of hours spent subsequent to the initial offer of judgment;

3) the lack of contemporaneous billing records;

4) the total number of hours billed;

5) the billing rate; and

6) the appended claims of attorneys peripherally related to the case.

These issues will be dealt with *seriatim*.

### Background

On June 11, 1985, the plaintiff, Mr. Hutchison, was arrested for speeding and taken to the Marion County lock-up. While confined there he was allegedly beaten by two deputy sheriffs. Upon release the plaintiff filed a citizen complaint, but the Marion County Sheriff's Department (the "Department") did not pursue it vigorously, ostensibly because Mr. Hutchison refused to take a polygraph test to corroborate his complaint.[1] The plaintiff subsequently filed a civil action in four counts, seeking damages and injunctive and declaratory relief against the Sheriff of Marion County and several of his subordinate officers. Count I alleged that the Department's policy requiring citizen-complainants to submit to a polygraph test impermissibly burdened first amendment rights by deterring people from petitioning for redress. The plaintiff also accused the Department of maintaining an intentionally lax system for reviewing citizen-complaints which insulated offending officers from charges and fostered a pattern of police brutality. The count sought certification of a class of persons who had been asked to submit to polygraph tests to verify their complaints, and injunctive and declaratory relief against the Department's practices and policies. Count II charged that the defendants' use of excessive force violated the plaintiff's fifth and fourteenth amendment rights; Count III sought recovery under a common law assault and battery theory, and Count IV alleged violation of various international treaties governing the rights of detained persons.

On February 18, 1988, the defendants tendered an Offer of Judgment, pursuant to Rule 68, for $7,000 on Counts II, III, and IV. This offer was refused, but an identical offer was made and accepted in December 1988, and judgment was entered upon it on December 29, 1988. As part of the settlement the parties stipulated that Count I was to be dismissed with prejudice. The issue of attorney's fees was expressly reserved for future determination by this court. Plaintiff's attorney has asked for $60,068.75 (including $2,568.75 for an associate's work, and $2,039.20 in costs) based on 287.5 hours billed at a rate of $200.00 per hour. The plaintiff was represented

---

1. According to personnel in the Sheriff's Department, the complaint was not pursued because it was "unfounded." Plaintiff's Reply Brief, Exhibit A, p. 88, deposition of Officer Willsey.

primarily by Mr. Sutherlin, but was initially represented by Ms. Hiner. The bulk of this opinion concerns Mr. Sutherlin's claims; those of Ms. Hiner are treated at the end.

### Discussion

#### A. Count I

■ The well-established "American Rule" is that a prevailing party is not ordinarily entitled to recover attorney's fees from the losing party. *See Pennsylvania v. Delaware Valley Citizens Council,* 478 U.S. 546, 561, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986) (citing *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975)). Congress responded to the *Alyeska* decision by creating a statutory entitlement to "reasonable" attorney's fees for "prevailing" parties in civil rights litigation. *See Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983). As amended, 42 U.S.C. § 1988 provides in relevant part:

> In any action or proceeding to enforce a provision of section 1981, 1982, 1983, 1985, and 1986 of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

While the statutory language is discretionary, the Supreme Court has held that fee awards should be denied only where special circumstances render an award unjust. *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (cited in S.Rep. No. 94–1011, p.4 (1976), U.S.Code Cong. & Admin.News 1976, 5908, p. 5912).[2] In the present case the court finds no special circumstances, nor do the defendants advance any, that would render an award of attorney's fees unjust.

The statutory threshold for entitlement to section 1988 fees is that the plaintiff must be a "prevailing party." This requirement is met if he succeeds "on any significant issue in litigation which achieves some of the benefit [he] sought in bringing the suit." *Texas State Teachers v. Garland Indep. School District,* —— U.S. ——, ——, 109 S.Ct. 1486, 1491, 103 L.Ed.2d 866 (1989) (citing *Hensley v. Eckerhart,* 461 U.S. at 433, 103 S.Ct. at 1939). It is also clear that a plaintiff need not proceed to a "full litigation of the issues" to be a "prevailing party." *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980). Vindication through a consent decree (*Hanrahan v. Hampton,* 446 U.S. 754, 757, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980) (per curiam)) or a Rule 68 offer of judgment (*Delta Air Lines v. August,* 450 U.S. 346, 352, 101 S.Ct. 1146, 1150, 67 L.Ed.2d 287 (1981)) also entitles a successful plaintiff to attorney's fees.

This does not mean, however, that a plaintiff who prevails on one issue—even if it is the "central issue"—is necessarily entitled to attorney's fees for time spent on other, unsuccessful issues. Where a case presents "distinctly different claims for relief that are based on different facts and legal theories," the losing party cannot be compelled to foot the bill for hours spent on the unsuccessful claim, because that work did not contribute to the benefits achieved by the suit. *Hensley v. Eckerhart,* 461 U.S. at 435, 103 S.Ct. at 1940 (citing *Davis v. County of Los Angeles,* 8 E.P.D. ¶ 9444 (C.D.Cal.1974), p. 5049, 1974 WL 180). Typically courts must determine whether a particular claim is sufficiently "related" to the successful claim to be compensable under section 1988. In the present case the plaintiff admits that the claim in Count I was based on a "distinctly different claim and theory" than the other counts. (Plaintiff's Memorandum in Support of Attorney Fees, p. 13) (hereinafter referred to as "Plaintiff's Memorandum"). Thus the issue before this court is whether the plaintiff can be deemed to have "prevailed" on Count I; if not, no fee may be awarded for hours spent on it. *Texas State Teachers v. Garland,* —— U.S. at ——, 109 S.Ct. at 1492 (citing *Hensley,* 461

---

**2.** A prevailing defendant can only recover attorney's fees where the plaintiff's suit was "frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978).

U.S. at 435, 103 S.Ct. at 1940); *Spanish Action Comm. of Chicago v. City of Chicago*, 811 F.2d 1129, 1133 (7th Cir.1987).

The defendants argue that the plaintiff did not prevail on Count I because the count was dismissed with prejudice; consequently they ask that the hours spent on the count be subtracted from the hours claimed in the petition. Conversely, the plaintiff asserts that he did "prevail" on Count I, alleging that his lawsuit catalyzed significant changes in the Department's processing of citizen-complaints. The plaintiff was assisted in pursuing the Count I claims by Mr. Waples of the Indiana Civil Liberties Union and one of his interns. Their claim for fees (Plaintiff's Memorandum, Exhibit E) must stand or fall with the determination of whether the plaintiff prevailed on this count.

■ Absent formal judicial relief, a plaintiff must satisfy a two-part test established in *Harrington v. DeVito*, 656 F.2d 264, 266–67 (7th Cir.1981) to qualify as a prevailing party. First, the lawsuit must be causally linked to the relief obtained. Second, the suit cannot have been frivolous or groundless. *See Rohrer v. Slatile Roofing and Sheet Metal Co., Inc.*, 655 F.Supp. 736, 739 (N.D.Ind.1987). This court does not find Count I to have been groundless, despite the defendant's unelaborated contention to the contrary.[3] The question of causality, however, presents a more difficult problem.

■ Courts have frequently wrestled with the difficulties of determining whether a lawsuit "caused" particular changes in defendants' actions. The analysis is complicated by the fact that the relief embodying the changes need not be "formal" (*Hanrahan v. Hampton*, 446 U.S. at 757, 100 S.Ct. at 1989, quoting S.Rep. No. 1011, 94th Cong., 2d Sess. 5, 1976 U.S.Code Cong. & Admin.News 5908, 5912), or even tangible. *Lenard v. Argento*, 808 F.2d 1242, 1248 (7th Cir.1987).[4] Discovering the causal factor of informal and intangible events seems more of a metaphysical than a legal inquiry, and its complexity is reflected in the amorphous approaches courts have adopted. In *Nadeau v. Helgemoe*, 581 F.2d 275, 280 (1st Cir.1978) the court looked to whether the lawsuit played a "provocative role" in effecting the desired changes. Other courts have stressed that the plaintiff's lawsuit need not be the "sole" or "primary" factor as long as it "contributed in a significant way" to the benefits achieved. *Cf. Disabled in Action v. Mayor & City Council of Baltimore*, 685 F.2d 881, 885 (4th Cir.1982); *Morrison v. Ayoob*, 627 F.2d 669, 671 (3d Cir.1980) (where more than one cause brings about a result, the lawsuit need only be a "material" factor). Finally, some courts advocate giving the word "causation" the most expansive definition possible. *N.A.A.C.P. v. Wilmington Medical Center, Inc.*, 689 F.2d 1161, 1169 (3d Cir.1982), *cert. denied*, 460 U.S. 1052, 103 S.Ct. 1499, 75 L.Ed.2d 930 (1983); *French v. Bowen*, 708 F.Supp.

---

**3.** The defendants' contention that Mr. Hutchison lacked standing to bring a meritorious claim on Count I presents a close constitutional question. Count I sought damages, and the personal, concrete harm suffered by Mr. Hutchison surely affords him standing under *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). But the count also seeks declaratory and injunctive relief, and the Supreme Court has held that to have standing for equitable relief, there must be a "real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496, 94 S.Ct. 669, 676, 538 L.Ed.2d 674 (1974)). Thus the plaintiff would have had to allege that he would have another encounter with the Sheriff's Department resulting in a citizen-complaint, and that he would again be re-

quired to submit to a polygraph. Plaintiff did not so allege. Without these allegations there is no "case or controversy" for Article III purposes. Count I is problematic because it presents a mixed claim for legal and equitable remedies. The court is hesitant to resolve the issue of Count I's compensability on these grounds for two reasons. First, the parties have not briefed the issue. Second, the issue of whether to compensate the plaintiff for time spent on Count I can be resolved without reaching this constitutional issue.

**4.** Thus if a civil rights suit "generates an 'external benefit' (a benefit not reaped by [the plaintiff] himself), there should be compensation for having created it." *Id.* at 1248. Here, an intangible benefit could be a Sheriff's Department more sensitive to prisoner abuse and the citizen-complaint system.

644, 647 (M.D.Pa.1989). All of these formulas presuppose that a significant change in the defendants' practices or policies has in fact been effected. This in turn is primarily a factual inquiry. *See Disabled in Action,* 685 F.2d at 885.

The record contains little to demonstrate that significant benefits were achieved, or if they were, that the plaintiff's lawsuit caused them. A class was never certified for the class action, and the count was ultimately dismissed with prejudice. Nevertheless, the plaintiff maintains that he prevailed on Count I, alleging that polygraph tests are no longer prerequisites to processing citizen-complaints, and that the "new" citizen-complaint system—"essentially adopted in toto" from a draft form submitted to the Department by the plaintiff[5]—more effectively polices the conduct of sheriff's officers. The court has compared the citizen-complaint form the plaintiff completed after his injury with the form now in use at the Department, and finds them remarkably similar. For all intents and purposes they are identical. With respect to any changes in Departmental policy not reflected on the form (such as a move away from mandatory polygraphing), there is only the plaintiff's unsupported assertion that significant benefits were achieved.[6] Moreover, any such benefits are at best ephemeral because the sheriff retains plenary power to alter Department policy as he sees fit.

While the court recognizes that the relief obtained need not be formal, it is worth noting that in most cases where the plaintiff was entitled to attorney's fees for prevailing without obtaining a judgment on the merits, the achieved benefits were articulated in a detailed consent decree. *See*

*Harrington v. DeVito,* 656 F.2d 264, 269 (7th Cir.1981); *Dawson v. Pastrick,* 600 F.2d 70, 78 (7th Cir.1979); *Rutherford v. Pitchess,* 713 F.2d 1416, 1422 (9th Cir.1983); *N.A.A.C.P. v. Wilmington,* 689 F.2d 1161; *Disabled in Action,* 685 F.2d at 833; *Nadeau v. Helgemoe,* 581 F.2d at 278; *Aspira of New York, Inc. v. Board of Ed. of City of New York,* 65 F.R.D. 541, 543–44 (S.D.N. Y.1975).[7] There is no such detailed or enforceable agreement in the case at bar. And even if significant changes in the Department's policies were evident, the causal connection with the plaintiff's lawsuit would be exceedingly tenuous.

More importantly, the Supreme Court seems to be moving away from the position that an award of attorney fees can be predicated on any mutual disposition of a claim. Just last term in *Texas State Teachers,* the court ruled that the "touchstone of the prevailing party inquiry must be the *material alteration of the legal relationship of the parties* in a manner which Congress sought to promote in the fee statute." — U.S. ——, ——, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989) (emphasis added). No such material alteration can be gleaned from a count dismissed with prejudice. In the present case, no class was certified, no first amendment rights were vindicated, the citizen-complaint form was not materially altered, and the count was dismissed with prejudice. These facts indicate that the plaintiff's lawsuit did not catalyze a new legal relationship between the parties. Consequently, the plaintiff cannot be held to have prevailed on Count I as a matter of law, and the hours spent on that count should be subtracted from the fee petition.[8] *See Jackson v. Illinois Pris-*

---

**5.** Plaintiff's Reply Brief, p. 7.

**6.** To the contrary, the defendant sheriff asserts that changes in citizen-complaint procedures stemmed from campaign promises, not from the plaintiff's lawsuit. Defendants' Response to Plaintiff's Memorandum in Support of Attorney Fees (hereinafter referred to as "Defendants' Response"), Exhibit B.

**7.** *See also Pudge v. Fruehauf Corp.,* 690 F.Supp. 692, 696–97 (N.D.Ill.1988), where the court did not award attorneys fees for time spent on a

dismissed claim to a plaintiff who prevailed on other issues after a four-day jury trial.

**8.** Even if the scope of section 1988 "prevailing" could be stretched to include Count I, the recovery for time spent on the count would be *de minimus.* In *Hensley,* 461 U.S. at 436, 440, 103 S.Ct. at 1941, 1943, the Supreme Court emphasized that the attorneys fees awarded must be reasonable in light of the "results obtained." Fees should be reduced to reflect limited success, and in view of the facts in the present case,

*oner Review Board,* 856 F.2d 890, 894 (7th Cir.1988).

■ Not surprisingly, the parties dispute the amount of hours that were spent on Count I. The defendants maintain, accurately, that the difficulty of isolating time spent solely on Count I was exacerbated by the plaintiff's failure to itemize the attorney fees per count.[9] This court appreciates the difficulty of separating billing hours per count, but the fee applicant must bear the burden of documenting hours to establish entitlement to an award. *Hensley v. Eckerhart,* 461 U.S. at 437, 103 S.Ct. at 1941. In these circumstances the plaintiff cannot complain if more hours are attributed to Count I—and thus discounted—than he thinks fit.

■ The plaintiff annotated his time records with a Roman numeral I to designate the hours spent primarily on Count I. These hours total to 33.5 hours. Careful scrutiny reveals, however, that even more hours are justly attributable to Count I. Furthermore, when entries are unclear as to whether the time was spent on a compensable claim, that time should be excluded.[10] Where it is possible for the court to fairly apportion aggregated hours, it will exercise its equitable discretion and do so.[11] *See Bovey v. City of Lafayette, Ind.,* 638 F.Supp. 640, 646–47 (N.D.Ind.1986).

The following hours will be deducted in their entirety under the authority of *Hensley v. Eckerhart:*

| Date | Hours |
|------|-------|
| 4/07/86 | 2.0 |
| 4/28/86 | 2.0 |
| 7/09/86 | 1.0 |
| 8/04/86 | .4 |
| 10/10/86 | 1.0 |
| 10/14/86 | 4.0 |
| 12/01/86 | 2.5 |
| 12/11/86 | .4 |
| 1/13/87 | .4 |
| 1/16/87 | .5 |
| 1/22/87 | 1.3 |
| 2/02/87 | 8.0 |
| 5/05/87 [12] | 2.0 |
| 6/29/87 | 4.0 |
| 9/15/87 | .5 |
| 5/20/88 | .3 |
| | 30.3 hours |

The following entries will be equitably apportioned:

| Date | Services Rendered | Hours Claimed | Hours Deducted |
|------|-------------------|---------------|----------------|
| 5/06/87 | Deposition of Rice and Willsey | 8.0 | 4.0 |
| 8/03/87 | Reviewed depositions of Jackson, Pinkston, Willsey and Rice | 6.5 | 1.6 |
| | | 14.5 | 5.6 [13] |

any possible success under Count I was very limited indeed.

9. The magistrate did order the plaintiff to break down the attorney fees "as to each count of the complaint" at a pretrial conference on September 10, 1987. The plaintiff objects that it was impractical and "awkward" to do so (Plaintiff's Reply, p. 13) because the time spent on Count I had "multiple purposes," including use of data gathered for possible punitive damages connected with the other counts (Plaintiff's Reply, pp. 8–9). But the plaintiff bears the burden of proof, and it is certainly more "awkward" for the court to try to parse out the non-compensable from the compensable hours that it is for the plaintiff. *See* n. 10, *infra.*

10. For example, the billing entry for April 7, 1986, covers the following stated activities:
Telephone conference with City Legal; telephone conference with attorney for Merit Commission; telephone conference with sheriff's office regarding citizen-complaint procedures.
It is not clear what the telephone calls to City Legal or the Merit Commission concerned. The call regarding the citizen-complaint procedures, however, relates to Count I. The plaintiff is responsible for keeping billing records "in a manner that will enable the reviewing court to identify distinct claims." *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941. Because the plaintiff has made no effort to indicate which portion of the time was spent on compensable claims, the entire 2.0 hours must be deducted.

11. The defendants concede the fairness of apportioning the billing entries in this fashion. Because this opinion must refer extensively to Mr. Sutherlin's billing records, they are included as Appendix A\*; his associate's (Mr. Korin) records are reproduced in Appendix B.\*

\* Publisher's Note: Appendices omitted from published opinion.

12. The content of the Willsey deposition clearly relates primarily to Count I citizens-complaint procedures, and is thus excludable. *See* Plaintiff's Reply, Exhibit A.

13. None of the time spent on the Willsey deposition is compensable. The court will subtract

The plaintiff identified 33.5 hours spent primarily on Count I. The court has above identified an additional 35.9 hours so spent. Thus 69.4 hours were spent on the non-compensable Count I claim, and must be deducted from the fee petition.

The claims of Mr. Waples must similarly be disallowed, because the record reflects that his (and his intern's) efforts were directed solely towards the citizen-complaint system claims of Count I. (See Plaintiff's Memorandum, Exhibit E.) Because the plaintiff did not prevail on Count I, Mr. Waples is not entitled to an award of attorney's fees.

### B. *Rule 68*

 The defendant's second objection is that Rule 68 precludes awarding attorney fees for any time spent after the unaccepted initial offer of judgment on February 18, 1988. Federal Rule of Civil Procedure 68 provides that if an offer of judgment is not accepted and "the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." The Supreme Court expressly held in *Marek v. Chesny*, 473 U.S. 1, 9, 105 S.Ct. 3012, 3016, 87 L.Ed.2d 1 (1985) that the term "costs" includes attorney's fees properly awardable in an action. In the context of civil rights attorney's fee petitions, a prevailing plaintiff is not entitled to section 1988 attorney's fees for any time spent after the offered judgment which was not exceeded by the ultimate recovery.[14] *Grosvenor v. Brienen*, 801 F.2d 944, 946 (7th Cir.1986). *See also Boorstein v. City of New York*, 107 F.R.D. 31 (S.D.N.Y.1985).

In the case at bar the initial (rejected) offer of judgment was for $7,000, and the second (accepted) offer was also for $7,000. The recovery ultimately obtained is patently *not* "more favorable" than the original offer. Therefore the defendant's argue that this case fits squarely within Rule 68's proscription of extra attorney's fees. Because the plaintiff derived no benefits from his attorney's post-(first) offer services, the defendants should not be liable for the superfluous costs Rule 68 was designed to obviate. The plaintiff, citing a previous order of this court,[15] counters that the defendants' interpretation would deter settlements, and thus conflicts with the primary purpose of Rule 68.

The application of Rule 68 to the present circumstances is problematic. The rule apparently contemplates situations where offers of judgment are spurned and the case subsequently goes to trial, *not* cases where a successive offer is accepted. The defendants contest this view, citing the Advisory Committee notes accompanying Rule 68, which states:

> In the case of successive offers *not accepted*, the offeree is saved the costs incurred after the making of the offer which was equal to or greater than the judgment ultimately obtained. (emphasis added).

Although the defendants believe this passage proves the present circumstances to be within the Rule's ambit, the words "not accepted" belie their claim. Only where the Rule's primary purpose of encouraging settlements has not been realized does its Damoclean sword fall. Moreover, the Advisory Committee on Civil Rules of the Judicial Conference of the United States, commenting on proposed revisions of Rule 68, noted that Rule 68 was designed to

half of the time spent deposing on 5/06/87, and one-fourth of the time spent reviewing the four depositions on 8/03/87.

**14.** Defendants who are ultimately found liable for less than their settlement offer recover their

attorney fees from civil rights plaintiffs only if the lawsuit was frivolous or without foundation. *Adams v. Wolff*, 110 F.R.D. 291 (D.Nev.1986).

**15.** *Engle v. Dills*, IP82–494–C (Sept. 9, 1986).

avoid protracted litigation by taxing a claimant with costs if he should recover no more *after trial* than would have been received if the claimant had accepted the defending party's offer....

102 F.R.D. 433 (emphasis added). Thus Rule 68 forces the plaintiff to evaluate a definite settlement award against the likelihood of greater success "upon *trial on the merits.*" *Marek v. Chesny,* 473 U.S. at 5, 105 S.Ct. at 3014. It does not force the plaintiff to choose between settling now or settling later.

Both the plain language and the purpose of Rule 68 support the plaintiff's contention that it will not operate to disqualify the hours spent between the two offers of judgment. The statute provides that a party may

> serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs *then* accrued.

F.R.Civ.P. 68 (emphasis added). The plain meaning of the language is that a Rule 68 offer implicitly includes an award for the costs (attorney's fees) incurred up to the time the offer is made. Thus the defendants' second offer of judgment on December 28, 1988—specifically made pursuant to Rule 68—encompassed the costs accrued *then;* that is, all attorneys fees up to December 28, 1988, and not just those incurred as of February 18, 1988 (the date of the first offer). It is important to note that the defendants could have specified in the second offer the amount of plaintiff's attorneys fees they were willing to assume. The Supreme Court has suggested that explicitly worded "lump-sum" settlements are permissible under Rule 68. *Marek v. Chesny,* 473 U.S. at 6, 105 S.Ct. at 3015. *See also Radecki v. Amoco Oil Co.,* 858 F.2d 397 (8th Cir.1988). Instead, the offer expressly excluded attorneys fees from the payment, reserving the issue to be deter-mined by this court. By so reserving the issue, the defendants acquiesced in the plain language of the statute, which includes all properly awarded attorney fees up to the date of the accepted offer. *Cf. Staples v. Wickesberg,* 122 F.R.D. 541, 546 (E.D.Wisc.1988); *Rateree v. Rockett,* 668 F.Supp. 1155 (N.D.Ill.1987).

Legislative history also buttresses the plaintiff's position. The primary purpose of Rule 68 is to encourage settlements, and it should be construed with this objective in mind. *Marek v. Chesny,* 473 U.S. at 6, 105 S.Ct. at 3015. The defendants' interpretation manifestly contravenes this purpose. If Rule 68 applied to the present case, it would provide a disincentive for attorneys to accept settlements once an initial settlement was rejected. It would also discourage careful consideration of such offers. The defendants' reading would require plaintiffs to precipitately accept a settlement offer for fear that he may be foreclosed from accepting a subsequent offer because his interim efforts would not be compensable. This would permit defendants to drive a wedge between the interests of the plaintiff and his lawyer. Congress recognized that the availability of attorneys' fees was necessary to attract competent counsel to civil rights claims. H.R. Rep. 1558, 94th Cong., 2d Sess. pp. 1–3 (1976), U.S.Code Cong. & Admin.News 1976, 5908; *Grosvenor v. Brienen,* 801 F.2d 944, 947 (7th Cir.1986); *Gekas v. Attorney Registration & Disciplinary Commission,* 793 F.2d 846, 853 (7th Cir.1986). It is also well recognized that attorneys may not be willing to take on civil rights claim without the promise of an award under section 1988. *Lenard v. Argento,* 808 F.2d 1242, 1247 (7th Cir.1987). Thus forcing a civil rights attorney to choose between compensation and his client's interests in settling thwarts the congressional purpose underlying section 1988. This court declines to adopt such an approach.[16]

---

**16.** It could be argued that these rationales only apply to situations where the subsequent offer of judgment is for the same amount as the first. After all, the defendants' reading of Rule 68 would not deter [and indeed would not even apply to] settling the case for more than the original offer. This argument fails to recognize that the plaintiff is still subject to manipulation by defendants who, knowing the scope of Rule 68, insist on settling only for the original amount offered. Such defendants could easily avoid the import of "costs *then* accrued" by

The court also observes that the only other court confronted with this issue has also held that Rule 68 does *not* apply to situations where an offer of judgment was followed by a settlement rather than a trial. *E.E.O.C. v. Hamilton Standard Div.*, 637 F.Supp. 1155 (D.Conn.1986). In that case, the E.E.O.C. had brought a sex discrimination suit against a woman's employer. The defendant filed an offer of judgment for $4,800 which was refused. One month later, the parties negotiated a settlement for $4,800, an up-graded employment record (*not* a promotion), and a dismissal of the action. The defendants then invoked Rule 68 to disallow post-offer attorney's fees. The court ruled against the defendant, holding that Rule 68 was operative only where the rejected settlement was followed by a trial; the court found "no authority for the proposition that [Rule 68] appl[ied] to cases that end in settlement and a stipulated dismissal...." *Id.* at 1158.

> Moreover, the extension of Rule 68 that has been urged by the defendant could in some circumstances frustrate the rule's purpose of "encourag[ing] settlements and avoid[ing] protracted litigation." (citing *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 359, n. 24, 101 S.Ct. 1146, 1153, n. 24 [67 L.Ed.2d 287] (1981)), *quoting* 12 C. Wright & A. Miller, *Federal Practice and Procedure* § 3001, p. 56 (1973).

*Id.* at 1158. For the reasons stated above, this court holds that Rule 68 does not operate to disqualify the attorney's fees accrued after the first offer of February 18, 1988. The offer of December 28, 1988, included "costs then accrued." Therefore

no hours will be subtracted from plaintiff's fee petition pursuant to Rule 68.

### C. *Contemporary Records*

The defendants' third contention is that the fee petition should be reduced because it is not adequately documented with contemporaneous records. Specifically, they contest the inclusion of "approximately 50" allegedly undocumented hours. (Defendants' Response, p. 21)[17] The Supreme Court has noted that "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939 (emphasis added). This court is urged to follow the Second Circuit in holding that documentation is a "prerequisite" to recovering attorney fees. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983). The undocumented hours would then necessarily fail. But the *Hensley* court left the reduction of fees for inadequate documentation to the discretion of the district courts; this court *may* reduce the award, but it is not required to. The Seventh Circuit, moreover, has not adopted what this judge considers to be a Draconian extension of *Hensley* by the Second Circuit.

The plaintiff candidly admits that not all of the billing claimed is accompanied by contemporaneous records: "Some time records were simply notations on legal sheets of paper which included notes made during telephone conversations or while working on Answers to Interrogatories or whatever. Those times may not have been transferred to the log sheet which were kept for all cases." Plaintiff's Reply, p. 14. Such lax record-keeping is hardly to be

---

including attorneys fees in the offered settlement. *This too would deter settlement. This clearly contravenes the congressional purpose of section 1988 as well as Rule 68, as discussed in the text.*

**17.** The defendants also object to the "$131.25 copying costs claimed by the plaintiff, for lack of documentation. While it is true that the plaintiff bears the burden of documenting costs (*Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939), this burden should not be carried to ridiculous extremes. Copy machines do not disgorge re-

ceipts every time they are used, nor can the *defendants reasonably expect such minutiae to be documented by practitioners who lack the sophisticated computer resources of large firms.* The number of copies made was quite reasonable, and this court will accept the plaintiff's sworn statement that they were "necessary or professionally appropriate." Plaintiff's Memorandum, Attached Affidavit of Mr. Sutherlin. Therefore no deduction will be made for those costs.

commended. An attorney with the considerable experience in civil rights litigation that plaintiff's attorney has is surely on notice that *Hensley v. Eckerhart* requires compensable hours to be documented. Nevertheless, reducing the fee award for lack of documentations is problematic in this case. The defendants failed to indicate the hours they claim are undocumented; they merely assert that 50 such hours exist (an assertion the plaintiff vigorously contests). Moreover, some of the alleged undocumented hours may overlap with the hours that were struck in Part A of this opinion, or hours that will be struck *infra.* The court cannot blindly accept the defendants' generalized representations. Defendants do identify a $280 charge for research performed for the plaintiff by a Mr. Warne. This entry (*See* Appendix C *) is indeed too vague, and it may have related to Count I. In any event, it should have been better documented [18] and accordingly will be subtracted from the submitted costs. Otherwise, this court will exercise its equitable discretion and refuse to strike the unidentified, allegedly undocumented hours.

### D. *Reasonableness of Fees*

The first step in determining a reasonable attorney's fee is to ascertain the "lodestar" figure; this is done by multiplying the "number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart*, 461 U.S. at 433, 103 S.Ct. at 1939. Once the lodestar is determined it may be adjusted upward or downward in accordance with the 12 factors (often called "multipliers") set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).[19] The most important criteria, however, is that the fee awarded be reasonable "in light of the level of success" achieved by the plaintiff. *Hensley v. Eckerhart*, 461 U.S. at 439, 103 S.Ct. at 1942. Thus the "results obtained" are the focal point of a fee determination. *Id.* at 437, 103 S.Ct. at 1941. If the success is "exceptional," enhancement of the fee is justified; if the success is limited, the award should be reduced. *Hensley v. Eckerhart*, 461 U.S. at 437, 440, 103 S.Ct. at 1941, 1943.

The first inquiry in determining the lodestar is ascertaining the reasonableness of the amount of hours claimed. The defendants argue that the plaintiff's attorney spent "excessive amounts of time … across the board in every category of activity," especially in time spent conferring with other attorneys and time spent on the telephone. Defendant's Response, p. 17. The truth of this proclamation is not self-evident. It is true that the plaintiff's attorney spent a good deal of time conferring with his client and others on the phone. None of the time claimed, however, is patently spurious, and attorneys do have an ethical duty to keep clients informed about their cases. Furthermore, many hours spent on the telephone have already been stricken because they related to Count I. The court declines to further reduce plaintiff's petition for time spent on the phone.

The plaintiff's petition must be further reduced, however, because it manifests improper "billing judgment." In *Hensley v. Eckerhart*, the Supreme Court noted that "[h]ours not properly billed to one's *client* also are not properly billed to one's *adversary*." 461 U.S. at 434, 103 S.Ct. at 1940. Such hours would include time spent organizing files or reviewing billing records. *Cf. Shorter v. Valley Bank & Trust Co.*, 678 F.Supp. 714, 725

---

\* Publishers Note: Appendices omitted from published opinion.

**18.** The plaintiff did not contest in his Reply that the entry was documented.

**19.** The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment due to accepting the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed; (8) the amount involved and the results obtained; (9) the attorney's experience and ability; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

(N.D.Ill.1988) ("most lawyers do not bill their fee-paying clients for hours spent preparing bills"); *Bovey v. City of Lafayette, Ind.,* 638 F.Supp. 640, 646 (N.D.Ind.1986). Under this rationale the following hours must fall:

| Date | Services Rendered | Hours |
| --- | --- | --- |
| 3/09/87 | Reviewed billing records | 2.5 |
| 12/05/88 | Telephone call to client's sister | .3 |
| 1/13/89 | Reviewed time records and expenses | 3.0 |
| | | 5.8 |

Therefore, 5.8 hours must be deducted from the plaintiff's petition.

■ Defendants also maintain that the plaintiff's billing rate was excessive. The plaintiff's attorney has requested $200 per hour, and has submitted affidavits from two lawyers stating that it is a reasonable rate. Incorporated into this rate are the risk of not prevailing, the difficulty of the case, and the other *Johnson* factors. In effect, while disclaiming that he is seeking to enhance the award with "multipliers," the plaintiff has simply tried to fuse them into the lodestar figure via the hourly rate. But the Supreme Court has stated that the risk of losing is not an independent basis for augmenting a reasonable fee. *Pennsylvania v. Delaware Valley Citizen's Council,* 483 U.S. 711, 107 S.Ct. 3078, 3086, 97 L.Ed.2d 585 (1987).[20] Furthermore, the difficulty of a case is adequately reflected in the number of hours worked. *Id.* 107 S.Ct. at 3087; *Blum v. Stenson,* 465 U.S. at 898, 104 S.Ct. at 1549. Permitting these factors to amplify the hourly rate when they are already subsumed in the number of hours worked would constitute double multiplication. These cases suggest that the plaintiff's billing rate should be reduced if it incorporates improper criteria.

■ Establishing a reasonable hourly billing rate is within the discretion of the district court which is familiar with the "prevailing market rates in the relevant community." *Blum v. Stenson,* 465 U.S. at 895, 104 S.Ct. at 1547. *See also Lucero v. City of Trinidad,* 815 F.2d 1384, 1385 (10th Cir.1987). Under *Bonner v. Coughlin,* 657 F.2d 931, 937 (7th Cir.1981) it is permissible for the court to employ a differential billing rate, whereby out-of-court services are compensated at a lower rate than in-court services. In the present case, differential billing seems more appropriate than a flat fee because virtually all of the services were rendered out of court. The court takes judicial notice of Mr. Sutherlin's expertise in civil rights litigation, and finds that $150 per hour for in-court services[21] and $125 per hour for out-of-court services is reasonable in this community for the legal work performed. Entries for the following dates constitute in-court services compensable at $150 per hour:

| Date | Services Rendered | Hours |
| --- | --- | --- |
| 2/10/87 | Pretrial conference before Magistrate | 1.5 |
| 9/10/87 | Pretrial conference | 1.0 |
| 12/09/87 | Settlement conference | 1.5 |
| 9/15/88 | Pretrial conference | 1.3 |
| | | 5.3 |

The balance of billed hours will be compensated at $125 per hour. At this point it may be useful to talley the properly billable hours and determine the lodestar figure.

Plaintiff claimed 287.5 hours. Of these, 69.4 were stricken as pertaining to Count I; 5.8 hours were also deducted for improper billing judgment. Thus a total of 75.2 hours must be subtracted from the plaintiff's claim:

$$287.5$$
$$- \ 75.2$$
$$\overline{\ \ 212.3}$$

To this figure must be added time spent on the petition for fees itself. *See Lightfoot v. Walker,* 826 F.2d 516 (7th Cir.1987); *Durett v. Cohen,* 790 F.2d 360 (3d Cir.1986). These hours—admirably documented by

**20.** The Seventh Circuit seems particularly to disfavor the use of "risk of losing" as a multiplier. *See In re Burlington Northern, Inc.,* 810 F.2d 601, 608 (7th Cir.1986); *McKinnon v. Berwyn,* 750 F.2d 1383, 1392 (7th Cir.1984).

**21.** The court will construe "in-court time" liberally to include time spent before magistrate and in government supervised pretrial conferences and settlement discussions.

the plaintiff—amount to 11.5 hours.[22] (The 4.9 hours attributed to his associate will be analyzed *infra*.)

$$212.3$$
$$+ \ 11.5$$
$$223.8$$

Of these 223.8 hours, only 5.3 are compensable at $150 per hour.

| 5.3 hours | 218.5 hours |
|---|---|
| × $150.00 per hour | × $125.00 per hour |
| $795.00 | $27,312.50 |

The lodestar figure for the work of Mr. Sutherlin is $28,107.50.

The defendants' only objection to the hours billed by Mr. Sutherlin's associate, Mr. Korin, is that they should be excluded because they came after the initial offer of judgment. This argument has already been disposed with *supra*. Mr. Korin lists a total of 34.25 hours, 8 of which pertained exclusively to the non-compensable Count I.[23] A further 4 hours must be deducted for using improper billing judgment:

| Date | Services Rendered | Hours |
|---|---|---|
| 1/11/89 | Organized file; worked on time records | 1.5 |
| 1/16/89 | Put together costs | 2.5 |
| | | 4.0 |

This leaves 22.25 billable hours, to which 4.9 hours for work spent on the fee petition must be added.[24] The claimed billing rate of $75 per hour is reasonable, nor do the defendants contest it. Thus the lodestar figure for Mr. Korin's work is:

$$27.15 \text{ hours}$$
$$\times \ \$75.00 \text{ per hour}$$
$$\$2,036.25$$

Added to Mr. Sutherlin's lodestar, the total lodestar for plaintiff's fee petition is $30,-143.75.

■ It remains to be determined if this figure is reasonable in light of the "results obtained." *Hensley v. Eckerhart*, 461 U.S. at 437, 103 S.Ct. at 1941. The defendants

argued that $60,000 was an unreasonable fee because the judgment was only for $7,000. The disparity is no longer so great, the fee having already been substantially reduced by this order. Moreover, a fee larger than the judgment is not necessarily a hallmark of unreasonableness. *See City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (attorney's fees award 10 times greater than the judgment). Congress determined that the vindication of civil rights was of paramount importance to our society; to that end section 1988 was enacted to attract competent counsel for civil rights litigants. *See* H.R. Rep. No. 94–1558, p. 1 (1976), U.S.Code Cong. & Admin.News, 1976, 5908. An attorney is entitled to reasonable compensation even when it exceeds the monetary value placed on the violated civil rights. Essentially, the defendants' argument is that the fee should be reduced because of the "limited success" of the plaintiff. The court does not consider the success to be so limited. The plaintiff prevailed on three counts stemming from his apparent abuse at the hands of the defendants. This result cannot be considered a "limited" success. The plaintiff's advocacy was skillful and effective, and was rendered over the course of three years. The favorable results obtained adequately justify the fee awarded.

■ The defendants also maintain that the contingency fee arrangement the plaintiff had with his attorney should be persuasive evidence as to the reasonable value of his service. This argument also lacks merit. The *Rivera* court specifically held that contingency fee contracts do not put a cap on attorney's fee awards. 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). And the Seventh Circuit has stated that "the existence of a contingent fee contract cannot be conclusive evidence of what a reasonable fee is, because the plaintiff's lawyer might not have been willing to take

---

**22.** These hours reflect time spent on the Plaintiff's Reply Brief. Time spent on the Plaintiff's opening memorandum is included within the 287.5 hours claimed.

**23.** *See* Appendix B.[*]

\* Publishers Note: Appendices omitted from published opinion.

**24.** These additional hours were spent after the affidavit (Plaintiff's Memorandum, Exhibit B) which enumerated hours billed up to January 16, 1989.

the case ... except for the hope of some additional award under section 1988." *Lenard v. Argento,* 808 F.2d 1242, 1247 (7th Cir.1987). *See also Grosvenor v. Brienen,* 801 F.2d 944, 948 (7th Cir.1987). In *Blanchard v. Bergeson,* —— U.S. ——, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989), the Supreme Court stressed that while a contingency fee contract may be probative of a fee's reasonableness, it "is but a single factor and not determinative." The Court was particularly concerned that undue emphasis on such contracts in determining reasonable attorney's fees would thwart the effective access to judicial process that section 1988 was designed to promote. *Id.* 109 S.Ct. at 945. In the present case the defendants offer no persuasive reason why the existence of a contingency fee contract should mandate a reduction of the lodestar figure.

### E. *Estoppel*

 Finally, the defendants charge that the plaintiff should be estopped from claiming much more than $23,850. Discussions between the parties disclosed that the major impediment in settling the case was the issue of attorney's fees. At a hearing before the magistrate on September 19, 1988, plaintiff's counsel told the defendants that his prior estimate of $23,850 (based on charges accrued up to March 11, 1988) had "not changed much." The defendants assert that they relied upon this figure in deciding to settle the case. The plaintiff counters that the defendants' reliance was not justified, because a review of their own files would have put the defendants on notice that many billable hours had been expended since March 11, 1988. A detailed analysis of estoppel law is unnecessary, however, because the reductions in the fee award detailed above substantially assuage the defendants' plaint. Even if this court were to hold plaintiff's counsel to his unguarded representation that his fee had "not changed much," the award would not be altered. The defendants must have realized that the prior estimate was just that—an *estimate*—which would be sup-

plemented by recent charges, especially as several important depositions had occurred since March 11, 1988. Allowing for this fact, and the defendants' knowledge that the plaintiff's estimate was not a "precise representation," [25] it would be difficult to find justifiable reliance. In any event, the present fee award of approximately $30,000 does not exceed the initial estimate enough to warrant the estoppel argument.

### F. *Claims of Related Attorneys*

The appended fee claims of Mr. Waples have already been disposed of above, but the claim by Ms. Hiner, who initially represented the plaintiff, must now be addressed. Ms. Hiner has submitted an affidavit itemizing "approximately" 50.5 hours of compensable time, and requests $75 per hour for out-of-court and $125 per hour for in-court services.

Popular iconography often depicts lawyers as sharks who can scent from vast distances money oozing from the pockets of wounded defendants. Sharks are often accompanied by remoras—smaller fish which attach themselves with their suction-cup heads to the shark's hide. Remoras do not take part in a "kill," but they do eat the small scraps of flesh torn loose by their colleague predators. The present claim resembles that of a remora; the defendant is wounded and vulnerable to smaller bites. Nevertheless, this particular claim has some merit, and it deserves scrutiny.

First, the defendants challenge 12 hours that Ms. Hiner spent representing Mr. Hutchison in child support proceedings. Though Ms. Hiner struggles to show a logical nexus between those proceedings and the plaintiff's civil rights claim, her struggle is futile. The court finds no reason why the sheriff's department should subsidize the plaintiff's domestic problems.

 Second, Ms. Hiner's hours are completely undocumented, and appear to be retrospective approximations. The only hours that can be accounted for are those spent in consultation with Mr. Sutherlin, and those, only because they are document-

---

**25.** Defendants' Response, p. 19.

ed in *his* records. Ms. Hiner claims fees for "[a]pproximately 10 hours in meetings and consultations with plaintiff's attorney Mike Sutherlin"; Mr. Sutherlin's records reflect 9.8 hours of such activity. The defendants complain that this is duplicative billing, but the court declines to rule that two attorneys cannot both bill for mutually beneficial conferences that advance their client's interest. Indeed, an important purpose of such meetings—avoiding redundant efforts—actually redounds to the defendants' benefit. These 9.8 hours are properly billable and properly compensable.

As for the other 28.5 undocumented hours claimed by Ms. Hiner, the court notes once again that the burden of establishing compensable work rests on the plaintiff, and Ms. Hiner has wholly failed to satisfy this burden. Indeed, the complete lack of documentation supports an inference that no compensable work was in fact done. However, the record reflects that Ms. Hiner did provide valuable services to Mr. Hutchison, and it comports with the purpose of section 1988 as well as with equity that Ms. Hiner receive some compensation. Therefore, in exercising its equitable discretion, the court will allow one-third of the undocumented hours—9.5 hours—to be compensable. Ms. Hiner's total compensation is therefore

$$19.3 \text{ hours}$$
$$\times \$75.00 \text{ per hour}$$
$$\$1,447.50$$

### G. *Conclusion*

Plaintiff's attorney Sutherlin is entitled to $30,143.75 in attorney's fees (this includes Mr. Korin's compensation). His itemized costs must be reduced by $280 for the undocumented research of attorney Warne. Thus the costs awarded amount to $1,759.20. Attorney Hiner is entitled to $1,447.50.

It is so ORDERED.