No. 1-94-2058

LILLIAN BURNELL BERLAK, as )
Executrix of the Estate of )
PAULINE HAAS, deceased, )
 )
 Plaintiff-Appellee, ) APPEAL FROM THE CIRCUIT
 Cross-Appellant, ) COURT OF COOK COUNTY.
 )
 v. )
 )
VILLA SCALABRINI HOME FOR THE )
AGED, INC., a Not for Profit )
Corporation, FATHER LAWRENCE ) HONORABLE RONALD C.
COZZI, MARGARET BECKER, and ) RILEY, JUDGE PRESIDING.
CATHOLIC BISHOP OF CHICAGO, a )
Corporation Sole, )
 )
 Defendants-Appellants, )
 Cross-Appellees. )

 JUSTICE GORDON delivered the opinion of the court:

 Lillian Burnell Berlak, on behalf of her deceased mother,
Pauline Haas, brought the instant action alleging negligence and
violation of the Nursing Home Care Reform Act of 1979 (the
Nursing Home Care Reform Act) (Ill. Rev. Stat. 1985, ch. 111 1/2,
par. 4151-101 et seq. now at 210 ILCS 45/1-101 et seq. (West
1994)) to recover for the personal injuries sustained by Haas on
June 15, 1986 while she was a resident at Villa Scalabrini Home
for the Aged. Named as defendants were Villa Scalabrini Home for
the Aged, Inc. (Villa Scalabrini), the nursing home; Father
Lawrence Cozzi, the administrator of Villa Scalabrini; Margaret
Becker, the director of nurses at Villa Scalabrini; and the
Catholic Bishop of Chicago, a corporation sole, the owner of the
premises. At trial, at the conclusion of the plaintiff's case, a
directed verdict was granted in favor of the Catholic Bishop of
Chicago but denied as to the remaining defendants. At the close
of all the evidence, the trial court denied defendants' renewed
motion for directed verdict as well as plaintiff's motion for
directed verdict on the issue of the decedent's negligence. The
jury returned a general verdict in favor of defendants Cozzi and
Becker as against the plaintiff and in favor of the plaintiff as
against Villa Scalabrini. The jury also determined the
decedent's damages to be $7,478.96, the amount of her medical
bills, but reduced that amount by 50 percent based upon a finding
that the decedent was negligent. Thereafter, pursuant to
plaintiff's motion, the trial court found that Villa Scalabrini
violated the Nursing Home Care Reform Act of 1979 and awarded
treble damages of $11,218.44 (trebling "recoverable damages"
rather than "actual damages") and attorney's fees and costs
totalling $85,000.
 On appeal, the defendants argue that the trial court erred
in denying their motions for directed verdict; in denying their
motion in limine and allowing plaintiff's witness to give an
opinion on the ultimate issue in the case; in allowing
plaintiff's witness to testify as an expert in violation of
Supreme Court Rule 191 (134 Ill. 2d R. 191); in ruling that the
general verdict of the jury implied a finding that the Nursing
Home Care Reform Act had been violated; and in awarding
attorney's fees and costs totalling $85,000. In her cross-
appeal, the plaintiff argues that the trial court erred in
granting a directed verdict to the Catholic Bishop of Chicago; in
denying plaintiff's motion for judgment notwithstanding the
verdict as to defendants Cozzi and Becker; in denying plaintiff's
motion for directed verdict on the issue of comparative
negligence; in denying plaintiff's post-trial motion for a new
trial on the issue of damages only; in trebling the amount of
Haas' "recoverable damages" (actual damages reduced by the amount
of Haas' negligence); and in failing to award all attorney's fees
and costs sought in plaintiff's petition and supplemental
petition.
[Material omitted as nonpublishable under Supreme Court
Rule 23.]
 VII. Attorney's Fees
 As its final argument on appeal, Villa Scalabrini contends
that the award for attorney's fees and costs in the amount of
$85,000 was improper because the plaintiff recovered only nominal
damages; because the award did not bear a reasonable relationship
to the litigation's success; and because the award ignored the
terms of a contingency fee agreement that may have existed
between the plaintiff and her attorneys.
 Section 3-602 of the Nursing Home Care Reform Act provides:
 "The licensee shall pay 3 times the actual damages, or
 $500, whichever is greater, and costs and attorneys
 fees to a facility resident whose rights *** are
 violated." Ill. Rev. Stat. 1985, ch. 111 1/2, par.
 4153-602 recodified at 210 ILCS 45/3-602 (West 1992).
 The requirement that the licensee pay the prevailing
resident's
attorney's fees is mandatory as evidenced by the legislature's
use of the word "shall" in the statute. Ordinarily, the use of
the word "shall" in a statute is indicative of a mandatory
legislative intent. E.g., Fumarolo v. Chicago Board of
Education, 142 Ill. 2d 54, 566 N.E.2d 1283 (1990); Newirk v.
Bigard, 109 Ill. 2d 28, 485 N.E.2d 321 (1985). The word "shall"
will not be given a permissive meaning where it is used with
reference to any right or benefit to anyone to the extent such
right or benefit depends upon giving a mandatory meaning to the
word. Newirk v. Bigard; Moon Lake Convalescent Center v.
Margolis, 180 Ill. App. 3d 245, 535 N.E.2d 956 (1989).
 The statutory award of attorney's fees is designed to
encourage nursing home residents to seek legal redress against
nursing homes for violations of their rights. As the Illinois
Supreme Court stated in Harris v. Manor Healthcare Corp., when
discussing the constitutionality of the treble damages provision
of the Act:
 "[W]ithout the possibility of recovering treble damages
 and attorney fees, many residents would likely forego
 suing a licensee for violations of the Act. The
 legislature could reasonably assume that residents,
 either because of their advanced age, mental or
 physical infirmities or lack of financial resources are
 often unlikely to pursue costly and time-consuming
 litigation in the hope of receiving an uncertain or
 small recovery. *** Moreover, many violations of the
 Act will yield little in the way of actual monetary
 damages. *** Providing for the recovery of treble
 damages has the presumed effect of encouraging private
 enforcement as well as encouraging compliance with the
 Act." 111 Ill. 2d at 369-70, 489 N.E.2d at 1382-83.
 The recovery of attorney's fees by a resident who prevails
in a
private right of action against the licensee is even more
necessary than the recovery of treble damages in order for a
resident to pursue litigation under the Nursing Home Care Reform
Act. Without that recovery, it is unlikely that attorneys would
be adequately remunerated for their successful efforts.
 Villa Scalabrini argues that even though the plaintiff
proved a violation of the Nursing Home Care Reform Act, she
should not have been awarded attorney's fees because her damages
were nominal. As there is no case law on the issue of attorney's
fee awards under the Nursing Home Care Reform Act, Villa
Scalabrini relies on federal case law concerning the Civil Rights
Attorney's Fees Award Act of 1976 (42 U.S.C. 1988). Villa
Scalabrini cites two cases, Farrar v. Hobby, 506 U.S. 103, 113 S.
Ct. 566, 121 L. Ed. 2d 494 (1992) and Willis v. City of Chicago,
999 F. 2d 284 (7th Cir. 1993), wherein the courts ruled that
although the petitioners were prevailing parties, because they
were awarded nominal damages in the amount of $1, they were not
entitled to attorney's fees because their litigation accomplished
little beyond giving them moral satisfaction that their rights
were violated. According to those courts, when a petitioner is
awarded nominal damages, that petitioner has failed to prove
actual, compensable injury, an essential element of the claim for
monetary relief and, as a result, is entitled to no fee.
 These federal civil rights cases are factually
distinguishable from the instant case, however. Unlike the
petitioners in Farrar and Willis, the plaintiff in the instant
case was not awarded nominal damages. She proved actual injury
and was awarded compensable damages for those injuries. Thus,
even under the reasoning of Farrar and Willis, the plaintiff
would not have been precluded from recovering attorney's fees
since she obtained more than a mere moral victory.
 The defendant next argues that the attorney's fee award in
the instant case was erroneous because it did not bear some
reasonable relationship to the damages awarded or to plaintiff's
success in proving all counts of her complaint. In support of
this contention, the defendant cites to two additional federal
civil rights cases, Lenard v. Argento, 699 F. 2d 874 (7th Cir.
1983) and Skoda v. Fontani, 519 F. Supp. 309 (N.D.Ill. 1981). 
Neither of these cases are current law. Skoda was implicitly
overruled by Farrar v. Hobby and Willis v. City of Chicago; and
on remand and appeal, the seventh circuit acknowledged in Lenard
v. Argento, 808 F.2d 1242 (7th Cir. 1987) that the "claim-
chopping" approach suggested in its earlier Lenard decision had
since been rejected by the United States Supreme Court in Hensley
v. Eckerhart, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40
(1983), a case which will be discussed below.
 The legislative intent behind section 3-602 of the Nursing
Home Care Reform Act suggests that attorney's fees should be
awarded whenever a violation of the Act is proved even if the
monetary recovery is minimal. As discussed above, our supreme
court in Harris v. Manor Healthcare Corp. acknowledged that many
violations of the Act would "yield little in the way of actual
monetary damages" (111 Ill. 2d at 369, 489 N.E.2d at 1383) such
that, in the absence of the possibility of being awarded
attorney's fees and treble damages, residents would likely forgo
suing licensees for violations of the Act. Since the purpose of
the Act was to make nursing home residents "'private attorney
general[s]'" (111 Ill. 2d at 369, 489 N.E.2d at 1382), awarding
attorney's fees in direct proportion to the amount of damages
recovered, would discourage private enforcement of the Act and
thus defeat that purpose.
 Moreover, even in civil rights cases, the award of
attorney's fees is not dependent upon a petitioner's recovery of
substantial monetary damages. As the United States Supreme Court
stated in City of Riverside v. Rivera, 477 U.S. 561, 575-76, 106
S. Ct. 2686, 2695, 91 L. Ed. 2d 466 (1986) (plurality opinion):
 "Congress did not intend for fees in civil rights
 cases, *** to depend on obtaining substantial monetary
 relief. *** Thus, Congress recognized that reasonable
 attorney fees under  1988 are not conditioned upon and
 need not be proportionate to an award of money damages.
 ***
 A rule that limits attorney's fees in civil rights
 cases to a proportion of the damages awarded would
 seriously undermine Congress' purpose in enacting 
 1988."
 Federal civil rights case law does provide, however, that if
the
plaintiff fails to prevail on all claims presented, the hours
spent on unsuccessful claims may be excluded in considering the
amount of reasonable attorney's fees. Hensley v. Eckerhart. In
such a situation, the court must consider whether the
unsuccessful claims were related to the successful claims and
whether the plaintiff achieved a level of success making it
appropriate to award attorney's fees for hours reasonably
expended on the unsuccessful claims as well. See Hensley, 461
U.S. at 435, 103 S. Ct. at 1940, stating:
 "In [some] cases the plaintiff's claims for relief will
 involve a common core of facts or will be based on
 related legal theories. Much of counsel's time will be
 devoted generally to the litigation as a whole, making
 it difficult to divide the hours expended on a claim by
 claim basis. Such a lawsuit cannot be viewed as a
 series of discreet claims. Instead the district court
 should focus on the significance of the overall relief
 obtained by the plaintiff in relation to the hours
 reasonably expended on the litigation."
 See also City of Riverside v. Rivera; Lenard v. Argento, 808
F.
2d at 1246 (if the lawyer "presents a congeries of theories, each
legally and factually plausible, he is not to be penalized just
because some, or even all but one, are rejected, provided that
the one or ones that succeed give him all that he reasonably
could have asked for").
 Under this analysis, the plaintiff's attorney's fees in the
instant case should not have been reduced solely because she
prevailed on only one count of her four-count complaint. As the
trial court found, all four counts involved a common core of
facts, the circumstances surrounding Haas' injury, and similar
theories of liability, negligence and statutory and regulatory
violations. Each count was different primarily due to the fact
that it named a different defendant and alleged variances as to
their alleged responsibilities and conduct. Since the claims
were related and since the plaintiff was awarded compensatory
damages, no reduction of attorney's fees was required due to her
failure to recover on the remaining three counts of her
complaint.
 Notwithstanding the interrelatedness of plaintiff's
successful and unsuccessful claims, we note that the plaintiff
sought additional damages for pain and suffering and disability. 
Since the jury did not award damages for those alleged losses and
since the damages awarded were reduced because of Haas'
negligence, defendants argue that the plaintiff did not obtain a
significant portion of the relief she sought. However, the
amount of monetary recovery is but a single factor to consider in
determining the success of plaintiff's action. The accrual of a
public benefit which is not reflected in the monetary damage
award also must be considered. See City of Riverside, 477 U.S.
at 571-72, 106 S. Ct. at 2693; Lenard, 808 F.2d at 1248. A
public benefit occurs if the nursing home is propelled to
implement any corrective policies or procedures as a result of
actual or potential litigation. Moreover, notwithstanding any
public benefit argument, the trial court did deny over $35,000 in
fees and costs and may very well have done so because of the
limited success achieved by the plaintiff.
 The defendant's final argument with respect to the award of
attorney's fees is that the trial court erred in denying
defendant's motion to compel production of plaintiff's fee
agreement with her attorney and in refusing to consider whether
the award of attorney's fees to the plaintiff should be reduced
to the extent, if any, that plaintiff's fee agreement provided
for payment of a contingent fee to her attorneys. In support of
its contention, the defendant cites one case, Hapaniewski v.
Rustin, 179 Ill. App. 3d 951, 535 N.E.2d 24 (1989). Hapaniewski
is irrelevant as it concerns an action for fees brought by an
attorney against his client. The attorney therein sought to
recover a larger fee award based upon principles of quantum
meruit in circumvention of the written fee agreement providing
for a contingent fee. The court held that the attorney was bound
by the express terms of his contract and could not recover under
quantum meruit principles.
 The instant case does not involve an attorney's right to
recover payment from his client pursuant to the express terms of
their contract. It involves an attorney's right to statutory
fees against his client's tortfeasor. The statute establishes a
right to fees but is silent as to the manner in which those fees
are to be computed. Notwithstanding the absence of any
legislative guidance in that respect, we are persuaded that the
legislative intent behind the provision for fees, as discussed
above, is to encourage, where warranted, the bringing of lawsuits
by nursing home residents and their representatives. In that
vein, we look to civil rights case law which also acknowledges
the need for private sector enforcement of the laws. See City of
Riverside v. Rivera; Hensley v. Eckerhart, 461 U.S. at 444-45,
103 S. Ct. at 1945 (Brennan, J. concurring in part and dissenting
in part) (civil rights laws depend heavily upon private
enforcement and fee awards have proved an essential remedy); Coop
v. City of South Bend, 635 F.2d 652 (7th Cir. 1980) (purpose of
Civil Rights Attorney's Fees Awards Act is to permit and
encourage the redress of civil rights litigation).
 In City of Riverside, the court rejected the notion that the
amount of fees awarded to a prevailing plaintiff be proportionate
to the amount of the plaintiff's recovery as is the case in
private sector tort litigation. That court in affirming an
attorney's fee award of $244,456 where the plaintiffs recovered
$33,350, stated:
 "The rule of proportionality would make it difficult,
 if not impossible, for individuals with meritorious
 civil rights claims but relatively small potential
 damages to obtain redress from the courts. This is
 totally inconsistent with Congress' purpose in enacting
 [the Civil Rights Attorney's Fees Awards Act]. 
 Congress recognized that private-sector fee
 arrangements were inadequate to ensure sufficiently
 vigorous enforcement of civil rights. In order to
 ensure that lawyers would be willing to represent
 persons with legitimate civil rights grievances,
 Congress determined that it would be necessary to
 compensate lawyers for all time reasonably expended on
 a case." 477 U.S. at 578, 106 S. Ct. at 2696.
 In Blanchard v. Bergeron, 489 U.S. 87, 109 S. Ct. 939,
103
L. Ed. 2d 67 (1989) and Lenard v. Argento, 808 F.2d 1242 (7th
Cir. 1987), the courts held that the existence of a contingent
fee contract was a relevant factor to be considered in
determining the reasonableness of the attorney's fees. They also
stated that while relevant, contingent fee contracts could not
place a ceiling upon fees recoverable by prevailing parties. In
this regard, the Lenard court stated:
 "The existence of a contingent fee contract cannot be
 conclusive evidence of what a reasonable fee is,
 because the plaintiff's lawyer might not have been
 willing to take the case on the terms set forth in the
 contract except for the hope of some additional award
 under section  1988 [the Civil Rights Attorney's fees
 Awards Act]." 808 F.2d at 1247.
 According to the Lenard court, some civil rights cases
resemble
ordinary tort cases and could be handled conventionally and
satisfactorily on a contingent fee basis. That court stated,
"where the civil rights suit involves substantial stakes, settled
precedent, and no defense of immunity, the resemblance may be
close enough [to conventional personal injury suits] to give the
terms of the contingent fee arrangement considerable evidentiary
significance." 808 F.2d at 1248. In that event, and only that
event, the fee set out in the contingent fee contract could have
been presumptively adequate to attract competent counsel and
induce them to take and press the case, the reason for statutory
fees. But cf. City of Burlington v. Dague, 505 U.S. 557, 112 S.
Ct. 2638, 120 L. Ed. 2d 449 (1992) (fee shifting statutes do not
permit enhancement of a fee award beyond the lodestar amount to
reflect fact that plaintiff's attorneys were retained on a
contingent-fee basis).
 We are persuaded as in City of Riverside, Blanchard and
Lenard that the existence of a contingent fee agreement between
the plaintiff and her attorney is a relevant factor to be
considered in determining the amount of statutory attorney's fees
that should be awarded under the Nursing Home Care Reform Act. 
Since the trial court in the case at bar did not compel
production of the fee agreement, there could have been no
consideration by the court of that agreement when it made its
determination as to the fee award; and, as a result, error
occurred. However, even if a contingent fee agreement existed in
the instant case, that agreement would have had minimal
evidentiary weight. It is clear that based upon the nature of
Haas' injuries, as born out by the award returned by the jury, an
attorney would not have been reasonably induced to represent the
plaintiff without the expectation of statutory attorney's fees. 
The test in order to be practicable and predictable in its
implementation must be an objective one without the illusive
complexity of attempting to determine the subjective anticipation
of the individual attorney.
 This case is distinguishable from Lenard where the
plaintiff's attorneys were awarded fees by the trial court in
excess of what they would have been entitled to under the
contingent fee agreement but where even under the contingent fee
agreement they would have been awarded a substantial fee of
$134,000. In that case, based upon the nature of the cause of
action and the substantial award returned, the plaintiff's
attorney would have had an objective basis to anticipate a high
level of return even without the guarantee of a statutory fee. 
Here, as born out by the actual award to the plaintiff, the
contingent fee would have been nominal and inadequate relative to
the effort that such recovery would entail. Thus, while the
trial court in the instant case erred in refusing the compel
production of plaintiff's fee agreement, the error if any was
harmless since under the facts of this case the existence of a
contingent fee agreement would have had little relevance.
[The following material is nonpublishable under Supreme Court
Rule 23.]
 XIII. Attorney's Fees and Costs
 As plaintiff's final argument in her cross-appeal, she
contends that the trial court erred in failing to award her all
attorney's fees and costs sought in her petition without offering
clear and concise reasons. The plaintiff also argues that the
court erred in denying fees that accrued during post-trial
proceedings.
 The trial court awarded attorney's fees and costs to the
plaintiff in the amount of $85,000, approximately $36,000 less
than the $121,143 sought in plaintiff's petition. Despite
plaintiff's contentions, the record shows that the trial court
did not arbitrarily decrease the amount of fees and costs sought
in her petition. The court held an extensive hearing on the
petition, heard testimony from plaintiff's expert witness as well
as from ten attorneys who worked on plaintiff's case. The court
found that the performance of plaintiff's attorneys was
"excellent" and "exemplary" and further found that their fees
should not be reduced even though the plaintiff succeeded on only
one count of her complaint (finding that the same work and effort
had to be done); and even though a directed verdict at the close
of plaintiff's case had been granted to one of the defendants. 
The court found, however, that the amount of fees and costs
sought by the plaintiff were not fair and reasonable and ordered
fees and costs in the amount of $85,000.
 The plaintiff argues that since the defendants did not argue
and since the trial court did find fault with respect to any item
listed in her fee petition that she should be entitled to all
hours claimed to have been worked at the claimed hourly rate. 
This "lodestar" approach has been regarded as a starting point in
federal civil rights cases, which as with the Nursing Home Care
Reform Act, allow for the statutory recovery of attorney's fees
to prevailing parties as an inducement to pursue private
litigation. See City of Riverside v. Rivera, 477 U.S. 561, 91 L.
Ed. 2d 466, 106 S. Ct. 2686 (1986); Hensley v. Eckerhart, 461
U.S. 424, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983). While the
number of hours reasonably expended on the litigation multiplied
by a reasonable hourly rate is "the most useful starting point
for determining the amount of a reasonable fee" (Hensley, 461
U.S. at 433, 103 S. Ct. at 1939), the courts have considered
other factors which could adjust the lodestar figure upward or
downward. As discussed in part VII of this opinion, those other
considerations include the results obtained by the plaintiff in
relation to the hours reasonably expended, whether the plaintiff
failed to prevail on claims unrelated to the successful claims,
the existence of a contingent fee contract between the plaintiff
and her attorneys, and the existence of external benefits which
advance the public interest and which secure important social
benefits not reflected in small damage awards. See City of
Riverside v. Rivera; Hensley v. Eckerhart; Lenard v. Argento, 808
F.2d 1242 (7th Cir. 1987). These considerations which, as
discussed at length in part VII of this opinion, did not
require further reductions sought by the defendants also lend
support for the trial court's reduction of the amount of
attorney's fees sought by the plaintiff in her fee petition. 
Thus, we do not find that the trial court abused its discretion
in denying a portion of the attorney's fees sought by the
plaintiff.
 The plaintiff also contends that the trial court erred in
denying in total her supplemental petition for fees and costs
which covered the time period beginning after the period covered
by her previous petitions, upon which the $85,000 award was made,
up to the time of the filing of the supplemental petition. The
plaintiff argues that section 3-602 of the Nursing Home Care
Reform Act, which provides for the payment of attorney's fees,
makes no distinction between fees incurred during pre-trial,
trial, post-trial and appellate representation. The plaintiff
further argues that, if attorneys are not remunerated for their
post-trial and appellate representation of an aggrieved nursing
home resident, the result could have a chilling effect in the
future such that attorneys would be less likely to undertake the
prosecution of such cases.
 We agree with the plaintiff's arguments in this regard and
we find that the trial court erred in refusing to consider
plaintiff's supplemental petition for attorney's fees and costs
covering the period of their post-trial representation. 
Similarly, the plaintiff would be entitled to submit a
supplemental petition to the trial court for attorney's fees and
costs incurred during the appellate process. See F.H. Prince &
Co. v. Towers Financial Corp., 266 Ill. App. 3d 977, 640 N.E.2d
1313 (1994) (contract term providing for the payment of
attorneys' fees and costs incurred in enforcing any rights
thereunder included right to supplemental fees and costs incurred
after judgment was entered). However, as with any fee petition,
only reasonable fees and costs should be allowed (see Kaiser v.
MEPC American Properties, Inc., 164 Ill. App. 3d 978, 518 N.E.2d
424 (1987)), and the trial court is only required to award those
fees "'reasonably expended,'" excluding therefrom fee requests
for hours that are excessive, redundant, or otherwise unnecessary
(Hensley, 461 U.S. at 434, 103 S. Ct. at 1939-40), focusing also
on the other considerations discussed above.
 For the foregoing reasons, we affirm the directed verdict in
favor of the Catholic Bishop of Chicago, the judgment on the
verdict in favor of defendants Cozzi and Becker against the
plaintiff, the judgment on the verdict in favor of the plaintiff
against Villa Scalabrini in the amount of $11,218.44, and the
award of attorney's fees and costs in the amount of $85,000. We
remand the plaintiff's supplemental petition for fees and costs
incurred after trial for further proceedings consistent with the
views expressed herein.
 Affirmed in part; reversed in part; and remanded.
 McNULTY, P.J, and HOURIHANE, J., concur.