Phyllis MERRIWEATHER,
Plaintiff–Appellee,

v.

FAMILY DOLLAR STORES OF
INDIANA, INC. Defendant–
Appellant.

No. 96–1052.

United States Court of Appeals,
Seventh Circuit.

Argued May 15, 1996.

Decided Dec. 26, 1996.

Robert S. Rifkin, argued, Maurer, Rifkin & Hill, Indianapolis, IN, for Plaintiff–Appellee.

James H. Hanson, argued, Lynne D. Lidke, Douglas C. Haney, Scopelitis, Garvin, Light & Hanson, Indianapolis, IN, for Defendant–Appellant.

Before CUDAHY, COFFEY, and FLAUM, Circuit Judges.

COFFEY, Circuit Judge.

Plaintiff Phyllis Merriweather sued defendant Family Dollar Stores under Title VII and 42 U.S.C. § 1981 for intentional race discrimination in denying her promotions, and for retaliating by firing her after she filed a complaint of discrimination. Following a bench trial, the district court found that Family Dollar did not discriminate against Merriweather, but unlawfully retaliated when it terminated her. The court awarded Merriweather back pay in the amount of $3,958, $25,000 compensatory and $25,000 punitive damages, and attorney fees. Family Dollar appeals, claiming that (1) the award of $25,-000 compensatory damages for emotional dis-

tress and humiliation is not rationally related to the evidence; (2) the evidence is insufficient to support an award of punitive damages based on reckless indifference to Merriweather's civil rights; and (3) the attorney fees should be reduced by half because the unsuccessful discrimination and successful retaliation claims were unrelated. We affirm the district court as modified.

## I.

According to the facts developed at trial, defendant Family Dollar Stores of Indiana operates seventy retail merchandise stores in Indiana. On November 27, 1991, Phyllis Merriweather, an African–American woman, was hired as a part-time clerk to work twenty hours per week at the Family Dollar Store No. 1402 in Indianapolis. Store 1402 was located in a predominantly African–American neighborhood. At the time Merriweather was hired, all the employees at Store 1402 were black, with the exception of the store manager, a white male. Merriweather had a B.A. degree in human resources with a concentration in retailing, and several years of experience in merchandising, customer service, and sales. At Family Dollar, Merriweather received a starting (minimum) wage of $4.35 per hour, which was increased to $4.50/hour upon her successful completion of a three and one-half month probationary period, and turned out to be the only raise Merriweather received during the term of her employment.

According to Merriweather's complaint filed in April, 1993, she alleged that in December of 1991, after seeing a Family Dollar Store advertisement for management trainees in a local newspaper, she submitted a resume to Jerry Blizzard, the company's district manager, a white male, seeking full time employment, preferably in a management position. Blizzard informed Merriweather that there were no promotional opportunities at Store 1402 at that time, and that if she was looking for advancement she would not find it at that store. She was further advised that Family Dollar hired clerks only on a part-time basis.

The trial court found that on December 12, 1991, Family Dollar hired Thomas Waak, a

white male who had been managing a "Big Lots" store (a Family Dollar competitor) in Indianapolis, to manage Store 1402. According to the company, the store had been poorly managed, and Waak was hired in hopes of improving quality and sales. A few days after he took over the job, Waak hired Nancy Wynne and Karen Lafollette, both white women, and Greg Rush, a black male, as part-time clerks. All three had worked for Waak at Big Lots and, according to Waak, he wanted to bring them with him as part of his "team" to improve Store 1402. The trial court concluded that Waak was entitled to make this personnel decision, based on his personal familiarity with Wynne, Lafollette, and Rush, and his confidence in their work. Lafollette's starting wage was $4.60, while Wynne started at $4.50/hour. Despite Blizzard's comments to Merriweather that there was no room for advancement at Store 1402, the district court found that Wynne received a *de facto* promotion less than a month after she started working at Store 1402: she was given full time hours, worked overtime most weeks, and was entrusted with additional responsibilities which gave her supervisory authority over the other employees. Less than three months after she had been hired, Wynne was formally promoted to fulltime status, with a pay increase to $4.80/hour. Three weeks later, Store 1402's floor manager, a black male, was terminated. Waak offered this position, with a wage of $6.00/hour, to Rush. When Rush turned down the position, Waak gave the promotion and accompanying wage increase to Wynne. Wynne, according to the findings of the trial court, was neither a high school graduate, nor did she have any previous supervisory or managerial experience. Waak later testified that he did not consider Merriweather for the floor supervisor position.

The trial court also found that Merriweather and at least two other black employees complained about Wynne's extra hours to both Waak and Blizzard. On February 26, 1992, after the company refused to reconsider the matter, Merriweather filed a complaint with the Indiana Civil Rights Commission, alleging race discrimination in Wynne's promotion to floor supervisor. Between February and November of 1992, Merri-

weather unsuccessfully sought a pay raise on at least two occasions. All other employees who had worked at Store 1402 more than five months received at least one pay raise and earned more than $4.50/hour. By November, Merriweather was the lowest-paid employee at Store 1402; several part-time clerical employees who had worked at the store less than six months made more money than she. It is also interesting to note that Merriweather never received a written evaluation of her work while she was employed at Family Dollar, nor did she receive any warning, oral or written, that her job was in danger. Waak testified that Merriweather was qualified for the floor supervisor position, and that he considered Merriweather a satisfactory employee who presented no problems on the sales floor or in dealing with customers.

On November 21, 1992, Merriweather met with Waak because she believed she had been short-changed on her most recent paycheck. At this time, they got into a heated discussion, and Merriweather again brought up the subject of a pay raise, which she believed was overdue. Waak suggested that she should talk to Blizzard, the district manager, about this problem. Accordingly, when Blizzard arrived at Store 1402 later that day, Merriweather spoke to him. He responded by querying her about two supposed disputes she had with Wynne and another employee. He also inquired what she intended to do about the discrimination charge she had filed with the Indiana Civil Rights Commission. Merriweather responded that the Commission was handling the matter, and she did not want to discuss it. Immediately thereafter, Blizzard told Merriweather he was terminating her employment.

After Family Dollar terminated Merriweather, she registered with temporary agencies and also looked for a full-time job, but was unable to find any work comparable to the floor supervisor position in which she was interested. A few months after her discharge, Merriweather received counselling and medication for stress. The counselling records reflect that she suffered considerable stress, accompanied by bouts of crying and insomnia, as a result of being unemployed, her inability to find a new job, and anger

stemming from her belief that Family Dollar had discriminated against her. The clinic records also reflected that these were not the only sources of stress in Merriweather's life at this time: her father had died, and her uncle had evicted her from her apartment during this period of unemployment.

On July 7, 1993, Merriweather filed suit in federal court, charging that Family Dollar (1) discriminated against her on the basis of race in failing to promote her and in limiting her work hours, and (2) when she filed a complaint of discrimination, retaliated against her by refusing to give her a raise, and discharging her. Following a bench trial, the court concluded that while Merriweather had made out a *prima facie* case of discrimination, the decision to promote Wynne rather than Merriweather was a matter of personal favoritism and sloppy personnel practices, rather than race discrimination. The court also concluded that lax management, rather than retaliation, led to Family Dollar's failure to give Merriweather a pay raise or written work evaluation. At the same time, the court found that Family Dollar discharged Merriweather in retaliation for filing her complaint with the Indiana Civil Rights Commission. The court also found that Family Dollar's proffered reasons for firing Merriweather were deliberate falsifications. The court awarded Merriweather $3,958 back pay, ruled that Merriweather had suffered emotional distress and humiliation as the result of her discharge, and ordered Family Dollar to pay Merriweather $25,000 compensatory damages. It also awarded $25,000 punitive damages. Family Dollar then filed a motion to vacate the judgment or, in the alternative, reduce the damages. The court denied the motion, and awarded Merriweather almost $64,000 in costs and attorney fees, but reduced the attorney fees 10% for her lack of success on the discrimination claim.

## II.

### A.

 Family Dollar argues that the evidence presented at trial does not support the compensatory damages award for emotional distress. Because we must defer to the trial court's findings on credibility,[1] the weight of the evidence, and inferences drawn therefrom, we traditionally give the trial court's findings great weight. *Littlefield v. McGuffey*, 954 F.2d 1337, 1348 (7th Cir.1992). We make three inquiries when reviewing a compensatory damages award: "whether the award is 'monstrously excessive'; whether there is no rational connection between the award and the evidence ... and whether the award is roughly comparable to awards made in similar cases." *EEOC v. AIC Security Investigations, Inc.*, 55 F.3d 1276, 1285 (7th Cir.1995) (emphasis added).

 Family Dollar concentrates its appellate argument on the alleged lack of a rational relationship between the evidence and the award, contending that Merriweather failed to establish that Family Dollar's retaliation was the sole proximate cause of her distress. We disagree. Merriweather took the stand and testified to the emotional and physical distress (including insomnia and lack of appetite) which she endured as a result of her discharge. A plaintiff's testimony about emotional distress may, in certain instances, of itself suffice to support an award for nonpecuniary loss. *Avitia v. Metropolitan Club of Chicago*, 49 F.3d 1219, 1227–29 (7th Cir.1995). Moreover, Merriweather also submitted counselling records which supported her claim that the discharge and subsequent inability to find work caused

---

1. Based on the facts presented in the record on appeal (i.e. Merriweather's quarrel with Waak and alleged disputes with Wynne), we might have reached a different result on the question of whether Merriweather was discharged solely in retaliation for refusing to withdraw her complaint with the Indiana Civil Rights Commission, were we deciding it in the first instance. Nonetheless, considering the deference which we give to the trial court's findings of fact, especially where the credibility of witnesses is concerned,

see, e.g., *Mlsna v. Unitel Communications, Inc.*, 91 F.3d 876, 879 (7th Cir.1996), we accept the court's determination that Family Dollar discharged Merriweather for exercising her civil rights. Indeed, recognizing the deference which we give the trial court on such matters, Family Dollar has chosen, for the purposes of this appeal, not to challenge the trial court's conclusion that Merriweather's termination was a retaliatory discharge.

her emotional problems. The trial court was entitled to give credence to the counselling records in fashioning the award of compensatory damages. Consequently, the court did not abuse its discretion in awarding Merriweather some compensatory damages for emotional injury.

But under the facts of this case, we believe that $25,000 in compensatory damages is inflated. It is not that the amount is out of line with awards in this Circuit for emotional distress. *See Webb v. City of Chester,* 813 F.2d 824, 837 n. 4 (7th Cir.1987) (collecting cases). Nonetheless, the record makes clear that Family Dollar's retaliation was just one of several factors which affected Merriweather's emotional state. She testified that her belief that she had been discriminated against, given negative recommendations which kept her from getting work elsewhere, and harassed by Family Dollar added to her anger and distress. By ruling against her on the discrimination claim, the district court demonstrated that this belief lacks any foundation at law under the facts, and thus cannot be considered in awarding damages. Other factors relating to her emotional distress during this tumultuous period in her life, but unrelated to Family Dollar, included the death of Merriweather's father, being evicted from her apartment, and being unable to find a suitable job. We are convinced that these problems had a significant impact on her emotional problems as well.

At the same time, we reject the defendant's argument that Merriweather was required to quantify how much of her distress was due to her firing, or even establish that most of her distress stemmed from the firing. We are not convinced that psychological injuries are readily amenable to such quantification, and forcing such a burden of proof upon a plaintiff would make compensatory damages nigh unto impossible to recover. Nonetheless, in the case at bar the only rational reading of the record is that Family Dollar was only partially responsible for Merriweather's emotional harm. In such circumstances, damages must be reduced accordingly. *See Avitia,* 49 F.3d at 1229 (damages must be proportional to the injury actually caused by the defendant). Accordingly, we conclude that a remittitur of $6,250 in compensatory damages for emotional distress (25% of the award) is more appropriate to establish a rational relationship between these damages and the evidence of the record.

### B.

Family Dollar also argues that the trial court erred in awarding Merriweather $25,000 in punitive damages. Punitive damages are proper only on a showing of "evil motive or intent, or ... reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983).[2] We review the trial court's award of punitive damages solely for abuse of discretion, *AIC Security,* 55 F.3d at 1287, and will set aside such an award "only if it exceeds an amount necessary to serve the objective of deterrence and punishment." *Allahar v. Zahora,* 59 F.3d 693, 696 (7th Cir.1995).

Family Dollar argues that the district court committed error in awarding punitive damages, because Blizzard, Family Dollar's district manager, failed to present direct evidence that he was aware of the fact that he was violating Merriweather's civil rights when he discharged her. We disagree. "[E]vidence that suffices to establish an intentional violation of protected civil rights also may suffice to permit the [factfinder] to award punitive damages, provided the [court], in its discretionary moral judgment, finds that the conduct merits a punitive award. No additional evidence [of reckless indifference] is needed." *Barbour v. Merrill,* 48 F.3d 1270, 1277 (D.C.Cir.1995) (internal citations omitted; discussing *Smith v. Wade,* 461 U.S. at 52, 103 S.Ct. at 1638); *see also*

---

**2.** *Smith v. Wade* was decided under 42 U.S.C. § 1983. We have previously recognized that its rationale applies equally to cases under § 1981. *Williamson v. Handy Button Machine Co.,* 817 F.2d 1290, 1296 (7th Cir.1987). It is similarly applicable to Title VII, since the Civil Rights Act of 1991, which made punitive damages available in Title VII cases, tracks the language of *Smith v. Wade.* 42 U.S.C. § 1981a(b)(1).

*Hill v. Shobe,* 93 F.3d 418, 421 (7th Cir.1996) ("reckless indifference" is a proxy for intent).

 It is true that to establish reckless indifference, it would be insufficient merely to introduce evidence that Blizzard fired Merriweather simply to rid himself of an alleged troublemaker. *Soderbeck v. Burnett Cty., Wisconsin,* 752 F.2d 285, 289–90 (7th Cir.), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 261 (1985). Nonetheless, it was not necessary for Blizzard to admit that he knew he was wrong to discharge Merriweather: the district court was entitled to infer from its review of the evidence that Family Dollar was recklessly indifferent, even without Blizzard's admission that he knew what he did was wrong. The court in effect found that Family Dollar terminated Merriweather because she refused to withdraw her complaint with the Indiana Civil Rights Commission. The court further inferred reckless indifference to Merriweather's civil rights, because Family Dollar deliberately gave false reasons for firing Merriweather. The court's conclusion that Family Dollar displayed reckless indifference is a finding of fact. Fed.R.Civ.P. 52(a); *Brenner v. Brown,* 36 F.3d 18, 19 (7th Cir.1994). Because the finding is not clearly erroneous, we refuse to second-guess the trial court on appeal. "[I]llegal conduct may support an award of punitive damages when the application of the law to the facts at hand was so clear at the time of the act that reasonably competent people would have agreed on its application." *Williamson v. Handy Button Machine Co.,* 817 F.2d 1290, 1296 (7th Cir. 1987).

 Family Dollar protests that this amounts to an automatic imposition of punitive damages upon the trial court's finding of intentional discrimination. Punitive damages are never awarded as a matter of right; the finder of fact, after reviewing the entire record, is called upon to make a "moral judgment" that the unlawful conduct warrants such an award to punish the wrongdoer and deter others. *Smith v. Wade,* 461 U.S. at 52, 103 S.Ct. at 1638; *Barbour,* 48 F.3d at 1277. The record contradicts Family Dollar's contention that the court automatically imposed punitive damages. When the court rejected Family Dollar's post-trial motion to modify the judgment, it specifically found that Family Dollar's attempt to deceive the court, by presenting false reasons for its decision to discharge Merriweather, was sufficiently serious that it warranted imposition of punitive damages. The purpose of the punitive damages, the court stated, was to punish Family Dollar and deter others from similar misconduct—especially with a violation like retaliation, which is "easy to conceal and difficult to prove."[3] That is precisely the sort of judgment peculiarly within the province of the finder of fact, *Smith v. Wade,* 461 U.S. at 52, 103 S.Ct. at 1638, and we will not disturb it on appeal. Consequently, we hold that the district court did not abuse its discretion in awarding punitive damages to Merriweather.

### C.

 After the district court entered judgment in favor of Merriweather, the plaintiff petitioned for $59,115 in attorney fees (337.8 hours at $175 per hour) and $3,054.29 in costs (primarily for filing fees, deposition transcripts, witness fees, and charges for locating and subpoenaing witnesses). 42 U.S.C. §§ 1988(b), 2000e–5. Family Dollar countered that because Merriweather prevailed only on the retaliation claim, the fee

---

3. The trial court explained its rationale for imposing punitive damages as follows:

"The court believes the award of $25,000 is appropriate here. The violation of the law here is one that is often easy to conceal and difficult to prove.... The rights protected by Title VII are of little value if employers can retaliate against employees who try to exercise those rights. The need for deterrence and punishment is significant. In addition, the court has already recounted in detail the defendant's attempted deception through Mr. Blizzard's ... testimony in support of the now abandoned "after-acquired evidence" defense. At the same time, the amount of an award must be reasonable and not merely a windfall for the plaintiff. In some sense, Family Dollar may be correct that retaliatory discharge is somewhat less morally repugnant than intentional racial discrimination. The court has considered that factor in awarding an amount well below the maximum permitted under the statute in this case."

Order of November 30, 1995, at 17–18 (internal citations omitted).

award should be reduced to reflect her limited success. Initially, the trial court made minor adjustments which reduced the attorneys fee to $58,952.50, and calculated that 102.8 hours which Merriweather's attorneys spent on discovery, legal research, and preparing to meet Family Dollar's defenses were fully compensable. Family Dollar does not dispute this conclusion on appeal.

The court then concluded that the discrimination and retaliation claims were so intertwined that it was impossible to separate one from the other: Merriweather's attorneys, the court reasoned, could not have tried the retaliation claim successfully without presenting evidence of the events that led Merriweather to file the underlying discrimination charge, which in turn led to her termination. The court estimated at least ninety percent of the time counsel originally spent analyzing the background of both claims would have been necessary to litigate the retaliation claim by itself. Accordingly, the court reduced the remaining award ($41,125 at $175/hour) by ten percent ($4,112.50), yielding an adjusted fee award of $54,840. Finally, the trial court allowed the costs requested, determining that Merriweather would have incurred the same had she pursued only the successful retaliatory discharge claim.

On appeal, Family Dollar argues that Merriweather's discrimination and retaliation claims were unrelated, with the result that the court should have reduced the award by fifty percent instead of just ten percent. "[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 440, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983). Just as crucial is whether a plaintiff's successful and unsuccessful claims are related: where a claim on which a plaintiff won is unrelated to a claim on which she lost, the plaintiff should not recover for the unsuccessful claim. *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 872–73 (7th Cir.1995). Simply put, a plaintiff who fails to prevail on a claim distinct from her other claims is not entitled to remuneration for unsuccessful work. *See Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir.), *cert.*

*denied*, 488 U.S. 926, 109 S.Ct. 309, 102 L.Ed.2d 328 (1988). Accordingly, the critical question is whether the legal work for which Merriweather seeks reimbursement was necessary for the retaliation claim upon which she prevailed.

"Because the award of attorneys' fees generally is fact-based, we review it under the highly deferential abuse of discretion standard." *Dunning*, 62 F.3d at 872 (quotations omitted). Deferential review is "appropriate in view of the district court's superior understanding of the litigation[.]" *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941 (1983). Nonetheless, because a district court may not arbitrarily reduce the number of hours requested, "[i]t remains important for the district court to provide a concise but clear explanation of its reasons for the fee award.... [T]he district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Id.; see also Hutchison v. Amateur Electronic Supply*, 42 F.3d 1037, 1048 (7th Cir.1994). The court has done so in the case before us.

Family Dollar concedes that the discrimination and retaliation claims are causally related, since the trial court found that Merriweather would not have been fired had she not complained of discrimination. Instead, Family Dollar properly notes that this court has previously recognized that "a claim of discrimination and a claim of retaliation for opposing that discrimination" are different. *Lenard v. Argento*, 808 F.2d 1242, 1246 (7th Cir.1987) (*in dictum*). Such causally related claims, *Lenard* teaches, are sequential but "not related for purposes of *Hensley*. A plaintiff should not be rewarded for a failed attempt to base liability on conduct that did not result in an actionable wrong to him, even if the conduct closely precedes, or follows close on the heels of, conduct that was wrongful." *Id.* at 1246–47. Thus, had the district court simply decided to grant Merriweather attorney fees for time spent on the discrimination claim, without making a finding that the facts underlying the discrimination claim were necessary to prove retaliation, we would be constrained to vacate the award.

584

Family Dollar, however, misconstrues the district court's rationale in calculating the fee award. The court recognized that proving discrimination was not an element of the retaliation claim and, strictly speaking, did not reward Merriweather for the unsuccessful claim. Rather, the court found that the successful claim for retaliatory discharge could not have been tried effectively without reviewing and analyzing the facts that led to the underlying discrimination charge:

> "[The retaliation claim] could not have been tried fairly without the evidence of the events that led to the underlying discrimination charge and that led up to the discharge. The finder of fact could not make the credibility determination by isolating the events of the discharge from the course of the parties' relationship.... [M]y best estimate is that counsel would have had to spent [sic] 90 percent of the total remaining time he spent on the case."

(Order of November 30, 1995, at 26–27). The court emphasized that its resolution of the retaliation claim rested on assessing the credibility of the witnesses: Merriweather prevailed because the trial court credited her version of events, while finding Family Dollar's recitation of the facts a deliberate falsehood. That Merriweather's claim of discrimination was not frivolous—indeed, the court found that Family Dollar's lax management practices reasonably led Merriweather to conclude that she was the victim of discrimination—enhanced her credibility.

This is not to say that we find Family Dollar's position without logic. As *Lenard* recognizes, there are undoubtedly cases where discrimination and retaliation claims are so discrete that a plaintiff who succeeds on only one claim would merit only a drastically reduced fee award. 808 F.2d at 1246–47. But we do not believe that this is such a case. Like the trial court, we recognize that a competent attorney must do more at trial than present just the bare bones of his *prima facie* case, particularly if he wishes to prevail where the case rests heavily on the credibility of the witnesses. It would be improper for the appellate court to reweigh the evidence and dispute the district court's conclusion that evidence of the underlying discrimination claim was crucial in assessing both parties' credibility on the retaliation claim. If reasonable persons can disagree on a district court's actions, there is no abuse of discretion. *Leffler v. Meer,* 936 F.2d 981, 984 (7th Cir.1991). Accordingly we defer, as we must, to the judgment of the trier of fact.

## CONCLUSION

Because Merriweather presented sufficient evidence to convince the court that her emotional distress resulted in part from her discharge, she is entitled to compensatory damages, modified and reduced as we noted above, since Family Dollar was not the sole cause of her distress. Given our deference to the trial court, we likewise refuse either to disturb the district court's determination that punitive damages should be imposed to punish Family Dollar's intentional retaliation against Merriweather for exercising her civil rights, or overturn the award of attorney fees.

AFFIRMED AS MODIFIED.